CADWALADER, WICKERSHAM & TAFT LLP
Sean F. O'Shea, Esq.
Michael E. Petrella, Esq.
Anthony De Leo, Esq.
200 Liberty Street
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

*Attorneys for Defendants Standard Pacific Mortgage Inc., Universal Mortgage Company, LLC and Eagle Mortgage Holdings, LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No.<br>08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC.,<br><br>Plaintiff,<br><br>- against -<br><br>1ST ADVANTAGE MORTGAGE, L.L.C. *et al.*,<br><br>Defendants. | Adversary Proceeding<br>No. 16-01019 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC.,<br><br>Plaintiff,<br><br>-against-<br><br>STANDARD PACIFIC MORTGAGE, INC. f/k/a FAMILY LENDING SERVICES, INC.,<br><br>Defendant. | Adversary Proceeding<br>No. 16-01002 (SCC) |

| | |
|---|---|
| LEHMAN BROTHERS HOLDINGS INC.,<br><br>                          Plaintiff,<br><br>          -against-<br><br>UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC,<br><br>                     Defendant. | Adversary Proceeding<br>No. 16-01297 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC.,<br><br>                          Plaintiff,<br><br>          -against-<br><br>EAGLE MORTGAGE HOLDINGS, LLC as successor by merger to EAGLE HOME MORTGAGE, INC., and UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC,<br><br>                    Defendants. | Adversary Proceeding<br>No. 16-01383 (SCC)<br><br><br><br>RELIEF IS SOUGHT FROM UNITED STATES DISTRICT JUDGE |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE FROM THE BANKRUPTCY COURT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND ...........................................................................................2

ARGUMENT ...............................................................................................5

I.  "CAUSE" EXISTS TO WITHDRAW THE REFERENCE IMMEDIATELY .................6

    A.  This Is A Non-Core Proceeding For Which The Bankruptcy Court Lacks Final Adjudicative Authority ................................................................7

    B.  This Matter Is Legal In Nature ...........................................................11

    C.  Judicial Economy, Prevention Of Forum Shopping, And Uniform Administration Require Withdrawal .....................................................12

        1.  Judicial Economy ..................................................................12

        2.  Prevention of Forum Shopping ................................................15

        3.  Uniform Administration of Bankruptcy Laws ............................15

II.  ALTERNATIVELY, WITHDRAWAL IS REQUIRED BECAUSE THE BANKRUPTCY COURT CANNOT ENTER A FINAL JUDGMENT OR CONDUCT A JURY TRIAL IN THIS NON-CORE MATTER .....................................16

    A.  This Proceeding Is Non-Core ..............................................................17

    B.  Defendants Are Entitled To A Jury Trial In This Non-Core Proceeding .............17

III.  THIS REQUEST IS TIMELY ....................................................................18

    A.  Discovery Has Only Just Begun And The Bankruptcy Court Has Ruled Only On Issues Of Law .....................................................................18

    B.  Prior Rulings Declining To Withdraw The Reference In LBHI Indemnification Cases Are Unpersuasive Here ....................................20

    C.  The Court Should Make Its Intentions To Withdraw The Reference In Connection With Trial Clear Even If It Denies this Motion.................................22

CONCLUSION...........................................................................................23

## **TABLE OF AUTHORITIES**

**PAGE(S)**

## **CASES:**

*Brown v. Sandimo Materials,*
  250 F.3d 120 (2d Cir. 2001) ...................................................11

*Cunningham v. Cornell Univ.*, No. 16-CV-6525 (PKC)
  2018 WL 4279466 (S.D.N.Y. Sept. 6, 2018) ...................................17

*Dairy Queen, Inc. v. Wood*,
  369 U.S. 469 (1962) ...........................................................11

*Design Strategies, Inc. v. Davis,*
  367 F. Supp. 2d 630 (S.D.N.Y. 2005) .........................................11

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld, LLP,*
  462 B.R. 457 (S.D.N.Y. 2011) ...............................................8, 18

*Dynegy Danskammer L.L.C. v. Peabody Coaltrade Int'l Ltd.,*
  905 F. Supp. 2d 526 (S.D.N.Y. 2012) ..........................................9

*Granfinanciera, S.A. v. Nordberg*,
  492 U.S. 33 (1989) ..........................................................8, 17

*In re Arbco Capital Mgmt., LLP,*
  479 B.R. 254 (S.D.N.Y. 2012) .................................................7

*In re Axiant, LLC,* No. 09-14118 MFW,
  2012 WL 5614588 (Bankr. D. Del. Nov. 15, 2012) ..............................8

*In re Coudert Bros. LLP*, App. Case No. 11-2785 (CM),
  2011 WL 5593147 (S.D.N.Y. Sept. 23, 2011) ...................................9

*In re Enron Creditors Recovery Corp.*,
  410 B.R. 374 (S.D.N.Y. 2008) ................................................19

*In re Fairfield Sentry Ltd. Litig.,*
  458 B.R. 665 (S.D.N.Y. 2011) ................................................10

*In re Iannacchino*, No. 14-22077,
  2018 WL 1009279 (S.D.N.Y. Feb. 20, 2018) ....................................8

### TABLE OF AUTHORITIES (cont'd)

**PAGE(S)**

*In re Iridium Operating LLC*,
   285 B.R. 822 (S.D.N.Y. 2002) ...........................................................................11

*In re Kenai Corp.*,
   136 B.R. 59 (Bankr. S.D.N.Y. 1992) ....................................................................7

*In re Kirwan Offices S.a.r.l.*,
   592 B.R. 489 (S.D.N.Y. 2018)............................................................................10

*In re Lawrence Group, Inc.*,
   285 B.R. 784 (N.D.N.Y. 2002) ...........................................................................15

*In re Lenders Abstract & Settlement Serv. Inc.*,
   493 B.R. 385 (E.D.N.Y. 2013) ...........................................................................11

*In re Lyondell Chem. Co.*,
   467 B.R. 712 (S.D.N.Y. 2012)............................................................................11

*In re Money Centers of Am., Inc.*,
   579 B.R. 710 (S.D.N.Y. 2016)........................................................................7, 8

*In re Orion Pictures Corp.*,
   4 F.3d 1095 (2d Cir 1993) ........................................................................7, 12, 16

*In re Seven Fields Dev. Corp.*,
   505 F.3d 237 (3d Cir. 2007) ...............................................................................10

*In re Texaco Inc.*,
   84 B.R. 911 (S.D.N.Y. 1988) ..............................................................................19

*In re The VWE Grp., Inc.*,
   359 B.R. 441 (S.D.N.Y. 2007) ...............................................................16, 17, 19

*In re Visteon Corp.*, No. 09-11786,
   2011 WL 1791302 (D. Del. May 9, 2011) ..........................................................15

*In re Weinstein*,
   237 B.R. 567 (Bankr. E.D.N.Y. 1999) ...........................................................12, 16

*In re: FKF 3, LLC*, No. 13-CV-3601 (KMK),
   2016 WL 4540842 (S.D.N.Y. Aug. 30, 2016) .....................................................17

**TABLE OF AUTHORITIES (cont'd)**

<u>**PAGE(S)**</u>

*Interconnect Tel. Servs., Inc. v. Farren*,
   59 B.R. 397 (S.D.N.Y. 1986) .................................................................19

*Lehman Brothers Holdings, Inc. v. 1st Advantage Mortgage, LLC, et al. (In re Lehman Brothers Holdings Inc.)*, Adv. Pro. No. 16-01019,
   2018 WL 3869606 (Bankr. S.D.N.Y. Aug. 13, 2018) ...................................6, 9, 10

*Lehman Brothers Holdings, Inc. v. 1st Advantage Mortgage, LLC, et al. (In re Lehman Brothers Holdings Inc.)*, Adv. Pro. No. 16-01019 (Bankr. S.D.N.Y. Mar. 13, 2019),
   Docket No. 825 ...............................................................................14

*Lehman Brothers Holdings, Inc. v. Hometrust Mortgage Co.*, No. 15-cv-304 (PAE)
   (S.D.N.Y. Feb. 25, 2015), Docket No. 14 ........................................9, 20

*Lehman Brothers Holdings, Inc. v. LHM Fin. Corp.*,
   No. 15-cv-300 (GHW) (S.D.N.Y. May 12, 2015), Docket No. 16 .......................20

*LightSquared Inc. v. Deere & Co.*, No. 13-Civ- 8157,
   2014 WL 345270 (S.D.N.Y. Jan. 31, 2014) .......................................12

*Northern Pipeline Const. Co. v. Marathon Pipeline Co.*,
   458 U.S. 50 (1982) .......................................................................7, 8, 9

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   454 B.R. 307 (S.D.N.Y. 2011) ..........................................................20

*Stern v. Marshall*,
   564 U.S. 462 (2011) ...................................................................7, 8, 9

*Zirlin v. Vill. of Scarsdale*,
   365 F. Supp. 2d 477 (S.D.N.Y.), aff'd, 161 F. App'x 100 (2d Cir. 2005) ...........11

## <u>TABLE OF AUTHORITIES (cont'd)</u>

<u>PAGE(S)</u>

**<u>STATUTES:</u>**

28 U.S.C. § 157 .................................................................................5, 8, 9

28 U.S.C. § 157(a) ..............................................................................5

28 § 157(b)(2)(C) ................................................................................8

28 U.S.C. § 157(d) ....................................................................... <u>passim</u>

28 U.S.C. § 157(3) ............................................................................16


28 U.S.C. § 1334(b) ..........................................................................10

**<u>OTHER AUTHORITIES:</u>**

Laura B. Bartell, <u>Motions to Withdraw the Reference – An Empirical Study,</u>
    89 Am. Bankr. L. J. 397, 439 (Summer 2015) .......................................18

 130 Cong.Rec. S7621 (daily ed. June 19, 1984) ......................................19

Defendants Standard Pacific Mortgage, Inc. f/k/a Family Lending Services, Inc. ("Standard Pacific"), Universal American Mortgage Company, LLC ("UAMC"), and Eagle Mortgage Holdings, LLC, as successor by merger to Eagle Home Mortgage, Inc. ("Eagle Mortgage" and, together with Standard Pacific and UAMC, the "Defendants"), respectfully submit this Memorandum of Law in support of their motion, pursuant to 28 U.S.C. §§ 157(d), (e), Rule 5011 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 5011-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), to withdraw the reference of the Adversary Proceedings (as defined below) from the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") to the United States District Court for the Southern District of New York (the "District Court").

## PRELIMINARY STATEMENT

In these adversary proceedings, LBHI asserts **state law claims** against Defendants for **money damages** that depend entirely on alleged **private contract rights**. The exclusively legal (rather than equitable), state-law nature of this action makes this a non-core proceeding and gives Defendants the constitutional right to a jury trial. The Bankruptcy Court is not legally permitted to conduct a jury trial in this non-core matter, requiring withdrawal to the District Court.  In any event, because the Bankruptcy Court cannot enter a final judgment in this non-core proceeding involving private rights and state law claims for damages (thus requiring duplicate proceedings in the event the reference is not withdrawn), concerns of efficiency warrant immediate withdrawal to the District Court because the District Court is familiar with straightforward contract disputes of the type involved in these adversary proceedings such that the District Court is best-equipped to expeditiously resolve these disputes.  Moreover, as explained herein, the District Court can fashion an order that withdraws the reference now, but still achieves the

limited efficiencies offered by handling a portion of the proceedings before the Bankruptcy Court.

## **BACKGROUND**

LBHI's Supplemental Second Amended Adversary Complaints[1] allege that Defendants sold residential mortgage loans to Lehman Brothers Bank ("LBB"). (Eagle Mortgage Compl. ¶¶ 1, 15; Standard Pacific Compl. ¶¶ 1, 19; UAMC Compl. ¶¶ 1, 12.) Under the agreements entered into for the sale of the loans from Defendants to LBB, Defendants allegedly made certain representations and warranties concerning the quality of the loans. (Eagle Mortgage Compl. ¶ 19; Standard Pacific Compl. ¶ 18; UAMC Compl. ¶ 17.) Defendants also allegedly agreed to indemnify LBB from liabilities it might incur as a result of breaches of the representations and warranties. (Eagle Mortgage Compl. ¶¶ 30, 52; Standard Pacific Compl. ¶¶ 30, 52; UAMC Compl. ¶¶ 29, 56.) At some point, LBB allegedly sold or transferred the loans to LBHI, which in turn sold certain of the mortgage loans to the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac"). (Eagle Mortgage

---

[1] The adversary proceeding styled Lehman Brothers Holdings Inc. v. Eagle Mortgage Holdings, LLC, Adv. Pro. No. 16-01383 (SCC) (Bankr. S.D.N.Y.) shall be referred to herein as the "Eagle Mortgage Adversary Proceeding" and the complaint filed commencing such adversary proceeding (as amended or supplemented) shall be referred to as the "Eagle Mortgage Complaint").

The adversary proceeding styled Lehman Brothers Holdings Inc. v. Standard Pacific Mortgage, Inc., Adv. Pro. No. 16-01002 (SCC) (Bankr. S.D.N.Y.) shall be referred to herein as the "Standard Pacific Adversary Proceeding" and the complaint filed commencing such adversary proceeding (as amended or supplemented) shall be referred to as the "Standard Pacific Complaint").

The adversary proceeding styled Lehman Brothers Holdings Inc. v. Universal American Mortgage Company, LLC, Adv. Pro. No. 16-01297 (SCC) (Bankr. S.D.N.Y.) shall be referred to herein as the "UAMC Adversary Proceeding" and the complaint filed commencing such adversary proceeding (as amended or supplemented) shall be referred to as the "UAMC Complaint").

The Eagle Mortgage Adversary Proceeding, the Standard Pacific Adversary Proceeding, and the UAMC Adversary Proceeding shall be referred to collectively herein as the "Adversary Proceedings"). The Eagle Mortgage Complaint, the Standard Pacific Complaint, and the UAMC Complaint shall be referred to collectively herein as the "Complaints"). The Adversary Proceedings were consolidated by Order of the Bankruptcy Court dated April 23, 2019. See Eagle Mortgage Adv. Pro. Docket No. 60; Standard Pacific Adv. Pro. Docket No. 100; UAMC Adv. Pro. Docket No. 56.

Compl. ¶¶ 2, 31; Standard Pacific Compl. ¶¶ 2, 11, 31; UAMC Compl. ¶¶ 2, 11, 35.) Upon selling the loans to Fannie Mae and Freddie Mac, LBHI provided certain representations and warranties that it alleges were "coextensive" with the representations and warranties made by Defendants to LBB. (Eagle Mortgage Compl. ¶¶ 2, 3, 51; Standard Pacific Compl. ¶¶ 2, 3, 51; UAMC Compl. ¶¶ 2, 3, 55.) LBHI also alleges that LBHI securitized certain of the loans it had acquired from LBB, which had bought them from the Defendants.  (Eagle Mortgage Compl. ¶¶ 3, 13, 41; Standard Pacific Compl. ¶¶ 3, 11, 41; UAMC Compl. ¶¶ 3, 11, 45.) LBHI made certain representations and warranties regarding the quality and characteristics of these securitized loans that LBHI alleges were coextensive with the representations and warranties made by Defendants.  (Eagle Mortgage Compl. ¶¶ 2, 3, 51; Standard Pacific Compl. ¶¶ 2, 3, 51; UAMC Compl. ¶¶ 2, 3, 55.) At some unspecified time, LBB allegedly also "assigned to LBHI all of its rights and remedies" under LBB's contractual agreements with Defendants. (Eagle Mortgage Compl. ¶ 22; Standard Pacific Compl. ¶ 22; UAMC Compl. ¶ 21.)

On September 15, 2008, LBHI commenced a voluntary chapter 11 case in the Bankruptcy Court. (Complaints ¶ 5.) Fannie Mae and Freddie Mac then filed proofs of claim alleging, among other claims, breaches of LBHI's representations and warranties relative to the mortgage loans. (Eagle Mortgage Compl. ¶¶ 33-35; Standard Pacific Compl. ¶¶ 33-35; UAMC Compl. ¶¶ 37-39.) LBHI's bankruptcy plan (the "Plan") was confirmed on December 6, 2011, and became effective on March 6, 2012. (See Bankr. Docket Nos. 23023, 26039.)[2]

Approximately two years thereafter, on January 12, 2014, LBHI entered into a settlement with Fannie Mae relative to a variety of claims, including the claims that LBHI breached its representations and warranties in the sale of mortgage loans. (See Bankr. Docket No. 42153; see

---

[2] Unless indicated otherwise, references to the bankruptcy docket contained herein refer to the docket in the above-captioned chapter 11 case of Lehman Brothers Holdings Inc.

also Eagle Mortgage Compl. ¶¶ 2, 36-37; Standard Pacific Compl. ¶¶ 2, 36-37; UAMC Compl. ¶¶ 2, 40-41.) On February 12, 2014, LBHI entered into a similar settlement with Freddie Mac. (See Bankr. Docket No. 42754; see also Eagle Mortgage Compl. ¶¶ 2, 36-37; Standard Pacific Compl. ¶¶ 2, 36-37; UAMC Compl. ¶¶ 2, 40-41.)

The trustees (the "RMBS Trustees") for certain of the applicable securitization trusts filed proofs of claim in LBHI's bankruptcy case, alleging breaches of LBHI's representations and warranties to the RMBS Trustees. (Eagle Mortgage Compl. ¶¶ 43-45; Standard Pacific Compl. ¶¶ 43-45; UAMC Compl. ¶¶ 47-49.)  On March 15, 2018, the Bankruptcy Court entered an order (Bankr. Docket No. 57785) estimating the RMBS Trustees' allowed claim, thereby resolving the majority of the RMBS Trustees' claims.  (Eagle Mortgage Compl. ¶¶ 3, 48; Standard Pacific Compl. ¶¶ 3, 48; UAMC Compl. ¶¶ 3, 52.)   LBHI also allegedly settled several other RMBS Trustee claims. (Complaints ¶ 3.)

On February 3, 2016, LBHI initiated this action against Defendants, claiming that, **under state law**, Defendants' failure to indemnify LBHI constitutes a breach of Defendants' alleged contractual obligations, entitling LBHI to money damages. (See Eagle Mortgage Compl. ¶¶ 59-61; Standard Pacific Compl. ¶¶ 58-59; UAMC Compl. ¶¶ 62-63.)

On February 18, 2016, Standard Pacific filed a motion to dismiss the Standard Pacific Adversary Proceeding based on the statute of limitations. See Standard Pacific Adv. Pro. Docket No. 19 (the "Standard Pacific Motion to Dismiss"). On March 31, 2017, Defendants, together with certain similarly-situated defendants in other adversary proceedings, filed an omnibus motion to dismiss these adversary proceedings based on the argument that the Bankruptcy Court lacked jurisdiction.  See Eagle Mortgage Adv. Pro. Docket No. 13; Standard Pacific Adv. Pro. Docket No. 62; UAMC Adv. Pro. 11 (the "Omnibus Motion to Dismiss"). On June 15, 2017, UAMC and Eagle Mortgage also filed motions to dismiss the Eagle Mortgage Adversary

Proceeding and UAMC Adversary Proceeding based on claim and issue preclusion.  <u>See</u> Eagle Mortgage Adv. Pro. Docket No. 19; UAMC Adv. Pro. Docket No. 17 (the "<u>UAMC/Eagle Mortgage Motions to Dismiss</u>").  On August 13, 2018, the Bankruptcy Court entered an order denying the Omnibus Motion to Dismiss.  <u>See</u> Eagle Mortgage Adv. Pro. Docket No. 31; Standard Pacific Adv. Pro. Docket No. 72; UAMC Adv. Pro. Docket No. 29 (the "<u>August 13 Order</u>").  On April 21, 2016, the Bankruptcy Court entered an order denying the Standard Pacific Motion to Dismiss.  <u>See</u> Standard Pacific Adv. Pro. Docket No. 26 ("<u>Standard Pacific Order Denying Dismissal</u>").  On October 31, 2018, the Bankruptcy Court also entered an order denying the UAMC/Eagle Mortgage Motions to Dismiss.  <u>See</u> Eagle Mortgage Adv. Pro. Docket No. 40; UAMC Adv. Pro. Docket No. 38 (the "<u>UAMC/Eagle Mortgage Order Denying Dismissal</u>").

On December 20, 2018, LBHI filed amended Complaints in each of the Adversary Proceedings.  <u>See</u> Eagle Mortgage Adv. Pro. Docket No. 48; Standard Pacific Adv. Pro. Docket No. 85; UAMC Adv. Pro. Docket No. 46.  Pursuant to the Amended Case Management Order entered in the Adversary Proceedings (<u>see</u> Eagle Mortgage Adv. Pro. Docket No. 53, Standard Pacific Adv. Pro. Docket No. 92, UAMC Adv. Pro. Docket No. 51), each defendant shall file an Answer or otherwise respond to the complaint(s) filed against it by May 13, 2019.  As of the date hereof, Defendants have not filed their Answers yet in the Adversary Proceedings. On March 14, 2019, the Bankruptcy Court entered an amended case management order in each of the Adversary Proceedings.  <u>See</u> Eagle Mortgage Adv. Pro. Docket No. 53; Standard Pacific Adv. Pro. Docket No. 92; UAMC Adv. Pro. Docket No. 51.  The parties have just begun discovery.

## <u>ARGUMENT</u>

Pursuant to section 157 of title 28 of the United States Code, a district court may refer bankruptcy proceedings "to the bankruptcy judges for the district." 28 U.S.C. § 157(a); <u>see also</u> <u>Lehman Brothers Holdings, Inc. v. 1st Advantage Mortgage, LLC, et al. (In re Lehman Brothers</u>

Holdings Inc.), Adv. Pro. No. 16-01019, 2018 WL 3869606, at *3 (Bankr. S.D.N.Y. Aug. 13, 2018).  In this district, the District Court has referred all such proceedings to the Bankruptcy Court pursuant to the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.); see also Lehman Brothers Holdings, Inc. v. 1st Advantage Mortgage, LLC, et al. (In re Lehman Brothers Holdings Inc.), Adv. Pro. No. 16-01019, 2018 WL 3869606, at *3 (Bankr. S.D.N.Y. Aug. 13, 2018).

28 U.S.C. § 157(d), however, permits the District Court to withdraw the reference to the Bankruptcy Court for "cause." 28 U.S.C. § 157(d).  For the reasons set forth more fully below, "cause" to withdraw the reference exists because (1) factors such as the nature of the proceeding and considerations of efficiency, uniformity, and prevention of forum shopping support immediate withdrawal of the reference for purposes of conducting pre-trial proceedings in the District Court; and (2) alternatively, in the event the District Court declines to withdraw the reference immediately, the reference should be withdrawn in connection with pre-trial dispositive motions and trial because the Bankruptcy Court does not have constitutional authority to issue final judgments or conduct a jury trial (to which Defendants are entitled) in this non-core matter. Moreover, this Motion constitutes a ripe, timely request to withdraw the reference, thereby satisfying the strictures of 28 U.S.C. § 157(d).

## I.    "Cause" Exists To Withdraw The Reference Immediately

"Cause" exists to withdraw the reference immediately to permit the District Court to conduct pretrial proceedings in connection with the Adversary Proceedings. See 28 U.S.C. § 157(d) ("The district court may withdraw, in whole or in part, any case or proceeding . . . for cause shown."). Courts situated in the Second Circuit consider three factors to determine whether

"cause" exists to withdraw the reference: (1) whether the proceeding is "core" or "non-core";[3] (2) whether the proceeding is legal or equitable; and (3) "considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law." In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir 1993); see also In re Money Centers of Am., Inc., 579 B.R. 710, 713 (S.D.N.Y. 2016) (citing Orion factors). Because each of these factors weighs in favor of withdrawal, the reference should be withdrawn immediately to permit pre-trial proceedings to be conducted in the District Court.

**A.    This Is A Non-Core Proceeding For Which The Bankruptcy Court Lacks Final Adjudicative Authority**

"A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn. For example, the fact that a bankruptcy court's determination on non-core matters is subject to de novo review by the district court could lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court." Orion, 4 F.3d at 1101; see also In re Kenai Corp., 136 B.R. 59, 61 (Bankr. S.D.N.Y. 1992) (holding that "whether the proceeding is core or non-core" is a "primary and determinative factor" in determining whether to withdraw the reference).

The core versus non-core distinction is vital to withdrawal analysis because, while bankruptcy courts may adjust debtor-creditor relationships as provided for under the Bankruptcy Code, they may not adjudicate state-created "private rights" originating elsewhere in the law. Northern Pipeline Const. Co. v. Marathon Pipeline Co., 458 U.S. 50, 76 (1982); see also In re Arbco Capital Mgmt., LLP, 479 B.R. 254, 262 (S.D.N.Y. 2012) ("In analyzing whether the bankruptcy court may constitutionally enter a final judgment, in turn, the Court considers . . .

---

[3] As discussed more fully below, the Supreme Court's decision in Stern v. Marshall, 564 U.S. 462 (2011) has altered the core versus non-core prong slightly in ways that ultimately are not relevant here.

**whether the right is public or private**. . . .") (emphasis added); see also In re Iannacchino, No. 14-22077, 2018 WL 1009279, at *2 (S.D.N.Y. Feb. 20, 2018) (citing Orion); Money Centers, 579 B.R. at 713 ("The relevance of the core/non-core inquiry is that absent the consent of the parties, only Article III judges can enter final judgments in non-core proceedings.").

Among other things, state law contract and tort claims cannot be decided by a bankruptcy court. Marathon, 458 U.S. at 71 ("[T]he restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages"); Stern v. Marshall, 564 U.S. 462 (2011) (tortious interference). This is true even of proceedings that are identified as "core" as a statutory matter under 28 U.S.C. § 157, such as a counterclaim by the estate against a creditor that has filed a claim against the estate. In Stern, the Supreme Court held that although the estate's counterclaim against a creditor for tortious interference was "a 'core proceeding' under the plain text of § 157(b)(2)(C)," the bankruptcy court could not rule on that claim because it arose under non-bankruptcy law. Id. at 475, 482. "If the claim involves private rights, Congress cannot vest final adjudicative power over it in the Bankruptcy Court consistent with Article III, whether the claim is 'core' or 'non-core'." Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld, LLP, 462 B.R. 457, 467 (S.D.N.Y. 2011).

In light of the limitations on the Bankruptcy Court's ability to adjudicate private rights, contract claims like those at issue here are non-core proceedings. See, e.g., In re Axiant, LLC, No. 09-14118 MFW, 2012 WL 5614588, at *1 (Bankr. D. Del. Nov. 15, 2012) (noting that "breach of contract . . . claims are not core proceedings"). LBHI's adversary complaint seeks to vindicate alleged contract rights under state law. These are exactly the type of "private rights" actions that the Supreme Court forbids bankruptcy courts from deciding, as the Supreme Court recognized in Marathon. See Marathon, 458 U.S. at 71; see also Granfinanciera, 492 U.S. 33,

55 (1989) (claim to recover fraudulent conveyance was "more accurately characterized as a private rather than a public right"); <u>Stern</u>, 546 U.S. at 495 (tortious interference claim raised issue of private right); <u>Dynegy Danskammer L.L.C. v. Peabody Coaltrade Int'l Ltd.</u>, 905 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (state law breach of contract claim did not involve public rights).[4]

Because LBHI's claims depend on private rights arising under non-bankruptcy law, the Bankruptcy Court cannot issue final judgments on them. And, because this limitation on the Bankruptcy Court's power is **constitutional**, it would prevent the Bankruptcy Court from ruling on a final basis on LBHI's adversary complaint even if this dispute were held to be "core" as a **statutory** matter under 28 U.S.C. § 157. Therefore, permissive withdrawal is appropriate in this case.

In fact, LBHI has already conceded that an indemnification claim substantial similar to those at issue here was non-core.  <u>See</u> <u>Lehman Brothers Holdings, Inc. v. Hometrust Mortgage Co.</u>, No. 15-cv-304 (PAE) (S.D.N.Y. Feb. 25, 2015), Docket No. 14 at 5 ("The parties agree that the contractual indemnification claim at issue here is non-core and that the Bankruptcy Court lacks authority to enter final judgment on the matter.").

Additionally, the Bankruptcy Court expressly held in its August 13 Order that the "Indemnification Claims" at issue in this adversary proceeding constitute "<u>prepetition Litigation Claims</u>" that "arose . . . prepetition at the time the Defendants sold LBB the allegedly defective loans."  <u>Lehman Brothers Holdings, Inc. v. 1st Advantage Mortgage, LLC, et al. (In re Lehman Brothers Holdings Inc.)</u>, Adv. Pro. No. 16-01019, 2018 WL 3869606, at *8-9 (Bankr. S.D.N.Y.

---

[4] The fact that a victory for LBHI might augment the bankruptcy estate does not alter the private nature of the rights that LBHI is asserting. <u>See</u>, <u>e.g.</u>, <u>In re Coudert Bros. LLP</u>, App. Case No. 11-2785 (CM), 2011 WL 5593147 at *7 (S.D.N.Y. Sept. 23, 2011); <u>Marathon</u>, 458 U.S. at 72.

Aug. 13, 2018) (emphasis added); see also id., at *9 ("[T]he predicate facts creating the Indemnification Claims occurred prepetition").   Accordingly, this dispute arose outside the bankruptcy context and is inherently non-core. In re Fairfield Sentry Ltd. Litig., 458 B.R. 665, 685 (S.D.N.Y. 2011) (claims that "are independent of bankruptcy" and involve facts "antecedent to the bankruptcy" are not core).

The Bankruptcy Court further held that it has only "related to" jurisdiction over this adversary proceeding, meaning that this adversary proceeding is non-core.  See 1st Advantage Mortgage, supra, 2018 WL 3869606, at *10 ("These facts create a close nexus between the Indemnification Claims and the Plan that easily meets the standard for 'related to' jurisdiction pursuant to 28 U.S.C. § 1334(b) and applicable law in this District."); see also In re Kirwan Offices S.a.r.l., 592 B.R. 489, 503 (S.D.N.Y. 2018) ("Bankruptcy courts have original jurisdiction over all bankruptcy cases and related proceedings. Their authority, however, depends upon whether the matter qualifies as a '[c]ore proceedin[g],' i.e., one that 'aris[es] in' or 'under' Title 11, or a '[n]on-core proceedin[g],' i.e., one that is 'related to' a bankruptcy case[.]") (citations omitted) (alterations in original).   Indeed, in order to reach the conclusion that it had jurisdiction over this adversary proceeding at all, the Court applied the so-called "close nexus" test[5], which **only** applies where there is no "core" proceeding and the court must therefore determine whether it at least has "related to" jurisdiction. See In re Seven Fields Dev. Corp., 505 F.3d 237, 260 (3d Cir. 2007) ("[T]he 'close nexus' standard only applies for the purposes of determining whether a federal court has jurisdiction over a non-core 'related to' proceeding").

---

[5] See August 13 Order at 12 (". . . the Court finds that the Indemnification Claims have a close nexus to the Plan in that the Plan provides for the retention of jurisdiction over such claims and that prosecution of the Indemnification Claims by the Plan Administrator affects the implementation and administration of the Plan[.]").

Accordingly, this proceeding is indisputably non-core, thereby warranting immediate withdrawal of the reference so that pretrial proceedings may be commenced in the District Court.

**B.     This Matter Is Legal In Nature**

Under Orion, the Court must also consider whether this matter is legal or equitable in nature and, therefore, whether the parties have a right to a jury trial.  See In re Lyondell Chem. Co., 467 B.R. 712, 723 (S.D.N.Y. 2012); see also In re Iridium Operating LLC, 285 B.R. 822, 835 (S.D.N.Y. 2002) ("A determination as to whether the claims in the adversary proceeding are legal or equitable is effectively a question of whether the defendant has a right to a jury trial on those claims.").  A breach of contract claim seeking money damages is inherently legal in nature. See Brown v. Sandimo Materials, 250 F.3d 120, 126 (2d Cir. 2001) ("[A] claim for breach of contract ... has historically been uniformly treated as a legal claim."); Dairy Queen, Inc. v. Wood, 369 U.S. 469, 477 (1962) ("[W]e think it plain that [plaintiffs'] claim for a money judgment is a claim wholly legal in its nature however the complaint is construed"); Zirlin v. Vill. of Scarsdale, 365 F. Supp. 2d 477, 483 (S.D.N.Y.), aff'd, 161 F. App'x 100 (2d Cir. 2005) ("A person is entitled to trial by jury in all cases in which money damages are sought and legal rights are at stake.").  Further, when conducting the analysis, "all doubts must be resolved in favor the party seeking a jury trial." Design Strategies, Inc. v. Davis, 367 F. Supp. 2d 630, 638 (S.D.N.Y. 2005).

Here, LBHI's contract claims against Defendants are obviously legal in nature, and LBHI explicitly seeks the legal remedy of "**money damages**." See Complaints ¶ 4 (emphasis added). Therefore, because this is a non-core matter that is wholly legal in nature, "cause" exists to withdraw the reference.  See In re Lenders Abstract & Settlement Serv. Inc., 493 B.R. 385, 397 (E.D.N.Y. 2013) ("Accordingly, the Court finds that Tudor is entitled to a jury trial in this Adversary Proceeding [seeking, among other relief, monetary damages for alleged breach of

contract], which is an adequate ground for this Court to grant Tudor's motion to withdraw the reference."); In re Weinstein, supra, 237 B.R. 567, 569 ("Since the plaintiff is entitled to a jury trial on the state law issues of liability and damages, its motion to withdraw the reference to the District Court should be granted.").

### C.   Judicial Economy, Prevention Of Forum Shopping, And Uniform Administration Require Withdrawal

Although far less relevant than the fact that this proceeding is non-core and purely legal in nature, the other Orion factors likewise either weigh in favor of withdrawal or have no bearing on this case.   These other Orion factors include "considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law." Orion, 4 F.3d at 1101.

### 1.   Judicial Economy

Because the Bankruptcy Court would be unable to enter a final judgment in this matter, the interests of judicial economy weigh heavily in favor of withdrawal.  See, e.g., Orion, 4 F.3d at 1101 ("[T]he fact that a bankruptcy court's determination on non-core matters is subject to *de novo* review by the district court could lead the latter to conclude that . . . unnecessary costs could be avoided by a single proceeding in the district court."); LightSquared Inc. v. Deere & Co., No. 13-Civ- 8157, 2014 WL 345270, at *5 (S.D.N.Y. Jan. 31, 2014) (unnecessary time and costs could be avoided by a single proceeding in the district court).  Moreover, because the District Court is assuredly familiar with straightforward contract disputes of the type involved in this case, it would be most efficient to have that court manage pretrial proceedings (including discovery), hear dispositive motions, conduct a trial, and issue a final judgment.

Defendants acknowledge that some efficiencies can be achieved by handling certain "omnibus" discovery in this case in conjunction with the other Lehman indemnification claims before the Bankruptcy Court.  However, those efficiencies are far less than might be assumed at first blush, and in any event can be accommodated by an appropriate order of the District Court.

The Bankruptcy Court has acknowledged that each of the LBHI indemnification cases pending before it involves a unique portfolio of loans, and each of those loans must be analyzed individually to determine whether LBHI is entitled to recover.[6]   In addition, LBHI has acknowledged that "every loan is a snowflake,"[7] recognizing that every loan and every loan file is unique, and thus breaches of the representations and warranties must be proven on a loan-by-loan basis.[8] Consequently, the efficiencies to be achieved by litigating common issues across numerous cases in the Bankruptcy Court are limited.  Indeed, Defendants have identified, at minimum, the following unique issues that must be adjudicated individually for each loan portfolio and therefore cannot be addressed on a consolidated or coordinated basis that would promote uniformity:

- The factual basis for Lehman's "defect" or "breach" allegations for each of the loans;

- The facts surrounding the underwriting, origination, sale, servicing, and any auditing or due diligence of the loans;

- The contractual relationship between each defendant and Lehman;

- The repurchase/indemnification history between the parties;

---

[6] See Bench Decision Regarding Estimation of RMBS Claims Pursuant to RMBS Settlement Agreement (Bankr. Case. No. 08-13555-scc, ECF. No. 5779) ("Bench Decision") at 51:22-24 (stating that "[o]ne thing is clear from all of these decisions though – loan-by-loan proof is required, either directly or through a sound extrapolation methodology"). The Bankruptcy Court established a process by which the RMBS trustees would collect, review, and present loan-level proof of the parties' claims and defenses from which the trustees and LBHI could reconcile the RMBS claims and determine an allowed amount for such claims. Id. at 17:3-18:4.

[7] See Direct Examination of Zachary Trumpp, Senior Vice President of Managing Claims for LBHI, (Bankr. Case No. 08-13555, ECF. No. 57088 at 89-99; see also Bench Decision at 28:23-29:5 (citing to Mr. Trumpp's testimony).

[8] During the RMBS estimation proceedings, the Bankruptcy Court stated that a "particularized review of each loan is required for purposes of determining breach (id. at 129:11-150), and found that the trustees had "failed to meet their burden to demonstrate, by a preponderance of the evidence, the existence of a material breach of a representation and warranty for each loan at issue which materially and adversely affects the value of such loan (id. at 160:12-17).

- The parties' course of dealing, which would include, at minimum: (1) any waivers or exceptions to guidelines and/or procedures, (2) guidelines applicable to each loan, (3) whether or not the loans were sold in bulk, (4) whether the loans were underwritten by defendant or Lehman, and (5) whether or not the loans were brokered;

- Calculation of damages for each specific defendant; and

- Lehman's assignment of each of the loans including the assignment of reps and warranties and remedies, if any, corresponding to the loans.

The facts relating to each of these issues will need to be established with different or unique witnesses (for example, Lehman relationship or account managers were typically assigned to different originators), including expert witnesses. Various defendants (including the Defendants here) will likely raise different and unique defenses (including *res judicata* and collateral estoppel, as were raised by Eagle and UAMC in case-specific motions to dismiss). The Bankruptcy Court has not begun (nor would it be appropriate for it to begin) the individualized, fact-specific analysis that will be required to resolve each of these disputes, so withdrawing the reference now will not result in any duplication of effort.

Additionally, the District Court can enter an order withdrawing the reference that takes advantage of the limited efficiency opportunities in the Bankruptcy Court. Defendants' primary concerns are: (1) a jury trial in the District Court; (2) District Court (not Bankruptcy Court) rulings on its motions to dismiss and summary judgment motions; (3) final District Court control of non-dispositive issues such as discovery rulings. Beyond that, Defendants are open to proceeding before the Bankruptcy Court where it is efficient and consistent with its rights to do so. For example, the Bankruptcy Court has entered an order setting a procedure and timetable for serving and answering document requests and interrogatories. See Lehman Brothers Holdings, Inc. v. 1st Advantage Mortgage, LLC, et al. (In re Lehman Brothers Holdings Inc.), Adv. Pro. No. 16-01019 (Bankr. S.D.N.Y. Mar. 13, 2019), Docket No. 825 at 9-10. The Court's

order withdrawing the reference could direct Defendants to adhere to that procedure and timetable, but preserving their right to appeal any discovery or other interlocutory rulings to this Court or its designated magistrate.   The order withdrawing the reference could also direct Defendants to conduct deposition discovery through the Bankruptcy Court to the greatest extent possible, while preserving Defendants' rights to appeal deposition-related rulings to the District Court on an interlocutory basis.

### 2.      Prevention of Forum Shopping

There is no issue of forum shopping in this case because, both as a constitutional and as a statutory matter, the District Court is the only court that can enter an order in this non-core matter involving private rights, meaning that the District Court is the ultimate forum in which this case will inevitably need to be adjudicated.   Additionally, at the time Defendants sold the relevant loans to LBB, they had no reason to believe that disputes regarding the applicable agreements would be litigated in a bankruptcy court, and courts have found withdrawal to contribute to the prevention of forum shopping where it helps to prevent parties from being forced to litigate in a forum they could not have reasonably foreseen.   See, e.g., In re Lawrence Group, Inc., 285 B.R. 784, 789 n. 6 (N.D.N.Y. 2002) (finding forum shopping would be prevented by withdrawal because defendant "should not be obligated to litigate in a forum that was not reasonably . . . foreseeable or expected.").

### 3.      Uniform Administration of Bankruptcy Laws

Failure to withdraw the reference would not promote "uniformity in the administration of bankruptcy law," because this case does not involve any bankruptcy laws.   Where a proceeding, like this one, involves only state law issues, no purpose is served by forcing the bankruptcy court to retain jurisdiction.   See, e.g., In re Visteon Corp., No. 09-11786, 2011 WL 1791302, at *4 (D. Del. May 9, 2011) (holding that "the [b]ankruptcy [c]ourt's retention of this claim would not

promote uniformity of bankruptcy administration, because the claim will require resolution of issues of Missouri tort law").

## II.      **Alternatively, Withdrawal Is Required Because The Bankruptcy Court Cannot Enter A Final Judgment Or Conduct A Jury Trial In This Non-Core Matter**

Alternatively, in the event this Court declines to withdraw the reference immediately to allow pre-trial proceedings to be commenced in the District Court, the Court **must** withdraw the reference so that Defendants may seek to have this matter disposed of by a final judgment of the District Court (say, by way of summary judgment) or, in the event Defendants are unsuccessful, to have their cases tried in the District Court.  As noted above, the Bankruptcy Court may not enter a final judgment in this matter because it is non-core.  Moreover, the Second Circuit has recognized that, where a litigant has a bona fide right to a jury trial in a non-core matter, withdrawal of the reference is essentially mandatory because "the constitution prohibits bankruptcy courts from holding jury trials in non-core matters." Orion, 4 F.3d at 1101-02; see also In re Weinstein, 237 B.R. 567, 577 (Bankr. E.D.N.Y. 1999) ("This court has determined that the plaintiff is entitled to a jury trial on liability and damages of the fraud action and that the plaintiff has not waived its jury trial right. Since this [Bankruptcy] Court lacks the § 157(e) designation to properly conduct a jury trial, the judges appointed under Article III of the United States Constitution constitute the only judicial officers of the Bankruptcy Court under 18 U.S.C. § 1331 et seq. that have the authority to preside over jury trials.  For the reasons set forth in this Memorandum, the Clerk of the Bankruptcy Court is authorized and directed to transfer this adversary proceeding to the District Court.").

Given that this proceeding asserts non-core claims for which Defendants are entitled to a final judgment from and jury trial before the District Court, withdrawal of the reference is necessary to afford litigants their full rights under the Constitution.  See In re The VWE Grp.,

Inc., 359 B.R. 441, 451 (S.D.N.Y. 2007) ("Under *Orion*, the court's finding that the claim is non-core coupled with defendants' jury demand is sufficient cause to withdraw the reference."); see also In re: FKF 3, LLC, No. 13-CV-3601 (KMK), 2016 WL 4540842, at *17, *19 (S.D.N.Y. Aug. 30, 2016) (holding that reference had to be withdrawn for purposes of trial in non-core proceeding involving common law legal claims seeking money damages; defendants had right to jury trial and bankruptcy court lacked constitutional authority to finally adjudicate claims).

Accordingly, in the event the Court declines to withdraw the reference immediately so that pre-trial proceedings may commence in the District Court, Defendants respectfully request that the reference be withdrawn for purposes of adjudicating dispositive motions, including motions to dismiss and post-discovery motions for summary judgment in the District Court, and, in the event this matter is not disposed of, for purposes of conducting trial.

### A.      This Proceeding Is Non-Core

As noted in Point I(A), *supra*, this is clearly a non-core matter; therefore, the Bankruptcy Court lacks constitutional authority to hear any jury trial to which Defendants are entitled. Accordingly, this factor favors a determination that the reference should be withdrawn in connection with any trial to be conducted in the Adversary Proceedings.

### B.      Defendants Are Entitled To A Jury Trial In This Non-Core Proceeding

Defendants' right to a jury trial effectively turns on whether the claim is legal or equitable in nature. Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 41-42 (1989); see also Cunningham v. Cornell Univ., No. 16-CV-6525 (PKC), 2018 WL 4279466, at *1 (S.D.N.Y. Sept. 6, 2018) ("Where 'legal rights,' as distinguished from 'equitable rights,' are asserted, a party has the right to a jury trial."). As already established above, this matter is legal rather than equitable in nature, which also weighs in favor of withdrawal for purposes of trial. See supra at I(B).

Accordingly, because Defendants have a right to a jury trial in this non-core proceeding, and the Bankruptcy Court lacks the constitutional authority to conduct such a trial, the reference must be withdrawn, at minimum, in connection with any motion for summary judgment or jury trial to be conducted in the Adversary Proceedings.

## III.   **This Request Is Timely**

### A.   **Discovery Has Only Just Begun And The Bankruptcy Court Has Ruled Only On Issues Of Law**

Defendants' request that the reference be withdrawn is also timely. See 28 U.S.C. § 157(d) ("The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion **or on timely motion of any party**, for cause shown.") (Emphasis added).

A recent nationwide survey of withdrawal motions found that, where a right to a jury trial is asserted, a majority of courts grant the withdrawal motion immediately without requiring that the bankruptcy court conduct pretrial proceedings.  See Laura B. Bartell, Motions to Withdraw the Reference – An Empirical Study, 89 Am. Bankr. L. J. 397, 439 (Summer 2015) (noting that, out of 174 motions to withdraw the reference in which a jury trial was sought, 104 motions were granted immediately, while only 27 motions were granted with the bankruptcy court to conduct pretrial proceedings).

Here, no Defendants have filed their Answers, and the case is moving towards discovery, motions for summary judgment, and eventually trial.  This Court should follow the majority rule and withdraw the reference immediately so that pretrial proceedings can begin in the District Court.   See, e.g., Dev. Specialists, 462 B.R. at 472 (withdrawing reference for pre-trial proceedings where no discovery had taken place, and because only issues of law had been presented in the case).

More generally, whether a motion to withdraw the reference is timely is governed by a standard that is "flexible and case-specific and must be administered in a manner that fosters the efficient and fair resolution of disputes." Id. at 468 (quoting In re Enron Creditors Recovery Corp., 410 B.R. 374, 381 n. 9 (S.D.N.Y. 2008)).  For example, withdrawal of the reference is appropriate, even after a substantial delay, when the case is in its preliminary stages and no party will suffer prejudice from the withdrawal.  See VWE, 359 B.R. at 447.  Here, discovery has only just begun, and Plaintiff will suffer no prejudice if the reference is withdrawn at this early stage of litigation.  See In re Texaco Inc., 84 B.R. 911, 920 (S.D.N.Y. 1988) ("There is no assertion by Texaco that pretrial preparation had proceeded to such an extent that a withdrawal motion would result in any prejudice. The only prejudice Texaco asserts is that it must divert its attention from preservation of the Texaco/Louisiana agreements and contest the withdrawal motion. This assertion does not arise to the level of prejudice justifying a denial of the withdrawal of the reference for failing to file it in a timely manner.").  Indeed, withdrawal of the reference has been found to be timely even where discovery had already commenced in the bankruptcy court. See, e.g., Interconnect Tel. Servs., Inc. v. Farren, 59 B.R. 397, 402 (S.D.N.Y. 1986) ("Finally, plaintiff argues that defendants' motion to withdraw the reference of this action from the bankruptcy court is untimely . . . , but I cannot say that [plaintiff] has been prejudiced by defendants' delay. All of the discovery that has occurred while this action has been pending in the bankruptcy court may be used if the action is removed to the district court.").

In addition, in considering whether a motion to withdraw the reference is timely, "[t]he court must take into consideration the status of and the effect such a motion has on the bankruptcy proceedings." Texaco, 84 B.R. at 919 (citing 130 Cong.Rec. S7621 (daily ed. June 19, 1984)).  Here, the Plan in Plaintiff's chapter 11 case has already been confirmed, and there is little, if anything, for the Bankruptcy Court to do in terms of administering Plaintiff's estate.

Accordingly, withdrawing the reference will have a *de minimis* effect, if any, on the Plaintiff's bankruptcy case.  See <u>Texaco</u>, 84 B.R. at 920-21 ("Based on the particular circumstances in this case and the permissiveness of other courts in allowing a movant to file a withdrawal motion where no prejudice will result . . . and where it does not appear that the movants are forum shopping, the movants filed their withdrawal motion in a timely manner.").

Further, where, as here, the grounds for withdrawing the reference are apparent from the face of the complaint, courts have held that forcing a party to litigate in bankruptcy court constitutes a waste of judicial resources.  See <u>Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC</u>, 454 B.R. 307, 317 (S.D.N.Y. 2011) ("Moreover, the grounds for withdrawal of the reference are apparent from the face of the complaint. It is therefore a waste of judicial resources to require JPMorgan to answer the complaint or file a motion to dismiss in the bankruptcy court before allowing it to move for withdrawal of the reference.").  Given that this matter involves only state law claims, the reference should be withdrawn in order to preserve, among other things, Defendants' right to a jury trial for those claims.

### B.    Prior Rulings Declining To Withdraw The Reference In LBHI Indemnification Cases Are Unpersuasive Here

Though at least two decisions issued in the LBHI case have denied motions to withdraw the reference at an *earlier* stage of cases brought by LBHI seeking indemnification relief,[9] Defendants respectfully submit that those non-binding decisions should not dictate the outcome here.

---

[9] <u>See</u> <u>Lehman Brothers Holdings, Inc. v. Hometrust Mortgage Co.</u>, No. 15-cv-304 (PAE) (S.D.N.Y. Feb. 25, 2015), Docket No. 14 (hereinafter, "<u>Hometrust</u>"); <u>Lehman Brothers Holdings, Inc. v. LHM Fin. Corp.</u>, No. 15-cv-300 (GHW) (S.D.N.Y. May 12, 2015), Docket No. 16 (hereinafter, "<u>LHM</u>").

The Hometrust decision, which explained its reasoning in far more detail[10] than the LHM opinion, gave five justifications for its ruling.  First, it noted that the Lehman bankruptcy is exceedingly complex.  Hometrust, at 5-6.  That is undoubtedly true, but it is also not relevant because this case has nothing to do with the complexities of the underlying bankruptcy, which was substantially completed many years ago with confirmation of the Plan.

Second, Hometrust suggested that maintaining the reference would promote "uniformity."  Id. at 7-8.  However, uniformity cannot be achieved in these cases because, as noted above, each of the LBHI cases seeking indemnification involves different defenses, different witnesses, and a unique portfolio of loans that must be analyzed on a loan-by-loan basis to determine whether LBHI is entitled to recover.  "Uniformity" is therefore an illusory goal here.  In a similar vein, the Hometrust court expressed hope that the Bankruptcy Court could "streamline or centralize discovery across the various indemnification actions." Id. at 6.  Again, however, as noted in Point II(D)(1) above, the unique nature of each case limits the opportunity for streamlined or centralized discovery, and in any event the District Court can both withdraw the reference and preserve most of the efficiencies that exist in the Bankruptcy Court.

Third, the Hometrust court noted that the reference should not be withdrawn because the Bankruptcy Court is already immersed in the issues related to this litigation.  Hometrust, at 6-7.  With all due deference to the Hometrust court, however, this is a state-law breach of contract case focused on a contractual indemnity provision and the loan re-sale and securitization markets.  The District Court does not require a "learning curve" to familiarize itself with breach of contract and indemnification principles and the defenses applicable to such cases and, as noted

---

[10] This may be due to the fact that LHM was decided after Hometrust.

above, the Bankruptcy Court is not necessarily "immersed" in issues related to this litigation, as the parties have barely started discovery and no responsive pleadings have been filed.

Fourth, the <u>Hometrust</u> court observed that there are many LBHI indemnification claims and defendants.  <u>Id.</u> at 6.  However, absent a compelling argument that extensive coordinated action is both possible and necessary here, the mere fact of multiple claims and defendants does not justify refusing to withdraw the reference where the requirements to do so are met.  As explained above, given the unique nature of the loan portfolios at issue and the necessity that each claim be analyzed and decided individually, the possibilities for coordinated proceedings before the bankruptcy court are limited.

Fifth, and finally, the 2015 <u>Hometrust</u> decision opined that the bankruptcy court's "well-crafted alternate dispute resolution plan" favored refusal to withdraw the reference.  <u>Id.</u>  Since 2015, the parties to this case have completed the ADR process referenced in <u>Hometrust</u>, to no avail.  <u>See</u>, <u>e.g.</u>, Adv. Pro. Docket No. 18 at 3.  As noted throughout this Motion, this matter is likely to be resolved only after a full and fair trial in the District Court, and immediate withdrawal of the reference brings the parties closer to that inevitability.

Accordingly, based on the foregoing, Defendants' request to withdraw the reference is timely under the circumstances of this proceeding, and the reference should be withdrawn immediately as to this matter so that pretrial proceedings may begin in the District Court.   In the alternative, the District Court should rule that the reference will be withdrawn prior to trial of this action.

### C.    The Court Should Make Its Intentions To Withdraw The Reference In Connection With Trial Clear Even If It Denies this Motion

In the event the Court denies this Motion without prejudice, the Court should nonetheless confirm for the parties that it will withdraw the reference no later than when these proceedings

are ready for trial.  Such a ruling would give Defendants comfort that their constitutional right to a jury trial will be protected and avoid having to relitigate a similar motion to withdraw the reference and the attendant cost and delay associated with additional motion practice.  Finally, such a ruling would cause no discernable harm to LBHI.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the District Court immediately withdraw the reference with respect to the Adversary Proceedings so that pre-trial proceedings may commence in the District Court or, alternatively, in the event the Court declines to withdraw the reference immediately, in connection with any pre-trial dispositive motions or any trial to be conducted in the Adversary Proceedings.

Dated:     New York, New York
           May 3, 2019

**CADWALADER, WICKERSHAM & TAFT LLP**
By */s/ Sean F. O'Shea*
Sean F. O'Shea, Esq.
Michael E. Petrella, Esq.
Anthony De Leo, Esq.
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
sean.o'shea@cwt.com
michael.petrella@cwt.com
anthony.deleo@cwt.com

*Attorneys for Defendants Standard Pacific Mortgage Inc., Universal Mortgage Company, LLC and Eagle Mortgage Holdings, LLC*