**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | : |
| | : **Chapter 11** |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : |
| | : **Case No. 08-13555 (SCC)** |
| Debtors. | : |
| | : |
| LEHMAN BROTHERS HOLDINGS INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| - against - | : **No. 19-CV-04080 (WHP)** |
| | : |
| STANDARD PACIFIC MORTGAGE, INC. f/k/a | : |
| FAMILY LENDING SERVICES, INC., EAGLE | : |
| MORTGAGE HOLDINGS, LLC as successor by merger | : |
| to EAGLE HOME MORTGAGE, INC., and UNIVERSAL | : |
| AMERICAN MORTGAGE COMPANY, LLC, | : |
| | : |
| Defendants. | : |

---

**MEMORANDUM OF LAW OF PLAINTIFF LEHMAN BROTHERS
HOLDINGS INC. IN OPPOSITION TO THE MOTION OF STANDARD PACIFIC
MORTGAGE, INC. ET AL. TO WITHDRAW THE REFERENCE**

---

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
William A. Maher
Paul R. DeFilippo
James N. Lawlor
Adam M. Bialek

*Attorneys for Lehman Brothers Holdings Inc.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 4

    A. The Underlying Dispute with Defendants......................................................... 4

    B. The Indemnification Claims Arise From Bankruptcy Court Claims Litigation.............. 4

    C. Three Different District Judges in This District Previously Have Rejected Motions to Withdraw the Reference in Related Indemnification Cases ........................................... 8

ARGUMENT ........................................................................................................................ 9

    I. DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN TO DEMONSTRATE THAT WITHDRAWAL OF THE REFERENCE IS WARRANTED ........................... 9

    A. "Cause" Does Not Exist to Withdraw the Reference ....................................... 9

    B. Three Other District Judges in This Court Have Previously Held That The Nature of This Case Does Not Require the Reference to Be Withdrawn ..................................... 11

    C. The *Orion* Factors Mandate the Denial of the Motion to Withdraw the Reference ...... 12

        1. Whether or Not the Indemnification Action Is Core, the Bankruptcy Court Should Continue to Exercise Its Jurisdiction ......................................................... 12

        2. Efficiency, Uniformity, and Economy Should Again Preclude Withdrawal ............. 15

        3. Denying the Motion to Withdraw Will Prevent Forum Shopping ............................ 19

    II. MANDATORY WITHDRAWAL IS NOT APPLICABLE......................................... 20

    III. THE MOTION IS UNTIMELY AND MERELY A LITIGATION TACTIC .............. 20

    A. Defendants' Motion Is Untimely and Disregards the Underlying Policy for Timely Filing Motions to Withdraw the Reference ................................................................. 20

    B. Defendants Cannot Distinguish Their Motion From the Earlier Requests For Withdrawal........................................................................................................................ 23

CONCLUSION...................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Development Specialists, Inc. v. Akin Gump Strauss Hauer & Feld, LLP*,
    462 B.R. 457 (S.D.N.Y. 2011) ............................................................................. 22

*Enron Corp. v. The Belo Co. (In re Enron Corp.)*,
    317 B.R. 232 (S.D.N.Y. 2004) ........................................................................... 18

*Executive Benefits Ins. Agency v. Arkison*,
    134 S.Ct. 2165 (2014) ........................................................................................ 14

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*,
    4 F.3d 1095 (2d Cir. 1993) .................................................................................... 9

*In re Combustion Equip. Assocs., Inc.*,
    67 B.R. 709 (S.D.N.Y. 1986) ............................................................................. 20

*In re Enron Creditors Recovery Corp.*,
    410 B.R. 374 (S.D.N.Y.2008) ............................................................................ 21

*In re Enron Power Mktg., Inc.*,
    No. 01 CIV.7964, 2003 WL 68036 (S.D.N.Y. Jan. 8, 2003) ............................. 19

*In re Extended Stay, Inc.*,
    466 B.R. 188 (S.D.N.Y. 2011) ........................................................................... 15

*In re Giorgio*,
    50 B.R. 327 (D.R.I. 1985) .................................................................................. 21

*In re Jacoby & Meyers-Bankr. LLP*,
    No. 14-10641 (SCC), 2017 WL 4838388 (S.D.N.Y. Oct. 25, 2017) .................. 15

*In re Kenai Corp.*,
    136 B.R. 59 (S.D.N.Y. 1992) ........................................................................ 21, 22

*In re Lawrence Group, Inc.*,
    285 B.R. 784 (N.D.N.Y 2002) ........................................................................... 19

*In re Lehman Bros. Holdings Inc.*,
    2013 WL 6633431 (S.D.N.Y. Dec. 17, 2013) .................................................... 16

*In re Lenders Abstract & Settlement Serv. Inc.*,
    493 B.R. 385 (E.D.N.Y. 2013) ........................................................................... 11

*In re Motors Liquidation Co.*,
    538 B.R. 656 (S.D.N.Y. 2015) ........................................................................... 16

*In re Park Ave. Radiologists, P.C.*,
    450 B.R. 461 (Bankr. S.D.N.Y. 2011) ............................................................. 12

*In re Texaco Inc.*,
    84 B.R. 911 (S.D.N.Y. 1988) ......................................................................... 21

*In re The VWE Grp., Inc.*,
    359 B.R. 441 (S.D.N.Y. 2007) ....................................................................... 21

*In re Visteon Corp.*,
    No. 09-11786, 2011 WL 1791302 (D. Del. May 9, 2011) ................................ 17

*In re Weinstein*,
    237 B.R. 567 (Bankr. E.D.N.Y. 1999) ............................................................ 11

*Interconnect Tel. Servs., Inc. v. Farren*,
    59 B.R. 397 (S.D.N.Y. 1986) ......................................................................... 22

*Ionosphere Clubs, Inc.*, No. 89-B-10448,
    1995 WL 479480 (S.D.N.Y. Aug. 11, 1995) .................................................. 21

*Kentile Floors v. Congoleum Corp. (In re Kentile Floors )*,
    1995 WL 479512 (S.D.N.Y. Aug.10, 1995) .................................................... 21

*Kirschner v. Agoglia*,
    476 B.R. 75 (S.D.N.Y. 2012) ......................................................................... 10

*Lehman Bros. Holdings Inc. v. Hometrust Mortg. Co.*,
    2015 WL 891663 (S.D.N.Y. Feb. 25, 2015) ............................................. passim

*Lehman Bros. Holdings Inc. v. Intel Corp.*,
    18 F. Supp. 3d 553 (S.D.N.Y. 2014) ......................................................... 10, 13

*Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A.*,
    480 B.R. 179 (S.D.N.Y. 2012) ....................................................................... 10

*Lehman Bros. Holdings Inc. v. LHM Fin. Corp.,*
    2015 WL 2337104 (S.D.N.Y. May 12, 2015) ........................................... passim

*Lehman Bros. Holdings Inc. v. iFreedom Direct Corp.*,
    No. 16-cv-423, (S.D.N.Y. Mar. 7, 2017) Dkt. No. 29 ................................. passim

*Lehman Bros. Holdings Inc. v. Wellmont Health Sys.*,
    2014 WL 3583089 (S.D.N.Y. July 18, 2014) ....................................... 10, 14, 19

*In re Lehman Bros Holdings Inc.*,
 18-CV-8986-VEC, 2019 WL 2023723 (S.D.N.Y. May 8, 2019) .............................. 7, 13, 16

*LightSquared Inc. v. Deere & Co.*,
 No. 13-Civ- 8157, 2014 WL 345270 (S.D.N.Y. Jan. 31, 2014) ......................................... 17

*Moore Macro Fund, LP v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings Inc.)*,
 2014 WL 4635576 (S.D.N.Y. Sept. 5, 2014)................................................................ 10, 16

*Mishkin v. Ageloff (In re Adler, Coleman Clearing Corp.)*,
 270 B.R. 562 (S.D.N.Y. 2001).......................................................................................... 18

*Official Comm. of Unsecured Creditors of FMI Forwarding Co. v. Union Transp. Corp. (In re
 FMI Forwar*ding Co.), No. 04 Civ. 630,
 2005 WL 147298 (S.D.N.Y. Jan.24, 200*5*) ..................................................................... 21

*Residential Funding Co., LLC v. Greenpoint Mortg. Funding, Inc. (In re Residential Cap., LLC)*,
 519 B.R. 593 (S.D.N.Y. 2014)........................................................................................... 15

*Schneider v. Riddick (In re Formica Corp.)*,
 305 B.R. 147 (S.D.N.Y. 2004)........................................................................................... 11

*Stern v. Marshall*,
 131 S. Ct. 2594 (2011)......................................................................................... 10, 14, 22

*Veyance Techs., Inc. v. Lehman Bros. Spec. Fin., Inc.*,
 2009 WL 4496051 (S.D.N.Y. Dec. 3, 2009) ..................................................................... 10

## STATUTES

28 U.S.C. § 157................................................................................................................... 12

28 U.S.C. § 157(c) .............................................................................................................. 13

28 U.S.C. § 157(d) ........................................................................................................... 9, 20

## RULES

Fed. R. Civ. P. 12(b) .............................................................................................................. 7

Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), the Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors ("Plan"), and the Plaintiff in the underlying adversary proceeding (the "Indemnification Action"), respectfully submits (i) this Memorandum of Law, and (ii) the Declaration of James N. Lawlor dated May 24, 2019 ("Lawlor Decl.") in opposition to the Motion to Withdraw the Reference (the "Withdrawal Motion") filed by the defendants Standard Pacific Mortgage, Inc., Eagle Mortgage Holdings, LLC, and Universal American Mortgage Company, LLC, (collectively "Defendants").

## PRELIMINARY STATEMENT

The crux of Defendants' argument is that the Bankruptcy Court should not be allowed to adjudicate any private, state law claims for money damages and that Defendants' right to a jury trial on these claims bars the Bankruptcy Court from handling any aspect of the case. While Defendants might be forgiven for making these weak arguments for withdrawal of the reference if they had been asserted in a timely manner, Defendants here are asserting these weak arguments *more than three years after* the underlying indemnification claim litigation began in the Bankruptcy Court, and *after three different District Judges in this Court* (i.e., Judge Engelmayer, Judge Wood and Judge Caproni) previously denied motions to withdraw the reference arising out of the same underlying indemnification claim litigation in the Bankruptcy Court.[1] The Plan Administrator respectfully suggests that Defendants should *not* be forgiven for making these same weak arguments now to a *fourth* District Judge.

---

[1] *See Lehman Bros. Holdings Inc. v. iFreedom Direct Corp.*, No. 16-cv-423, Order, Dkt. No. 29 at 1 (S.D.N.Y. Mar. 7, 2017) ("*iFreedom*") (Caproni, J.), Lawlor Decl., Exh. A; *Lehman Bros. Holdings Inc. v. Hometrust Mortg. Co.*, 2015 WL 891663 (S.D.N.Y. Feb. 25, 2015) ("*Hometrust*") (Engelmayer, J.); and *Lehman Bros. Holdings Inc. v. LHM Fin. Corp.*, 2015 WL 2337104 (S.D.N.Y. May 12, 2015) ("*LHM*") (Wood, J.).

Defendants claim that granting their request to withdraw the reference serves judicial economy, prevents forum shopping and results in uniform administration. That is incorrect. Withdrawing the reference at this stage results either in the balkanization of hundreds of similar cases or this Court simply superseding the Bankruptcy Court as the centralized clearinghouse. Three other District Judges in this Court have explained repeatedly that such results do not satisfy this District's requirements for withdrawal of the reference, and stated that the Bankruptcy Court remains the ideal forum to manage cases that involve, at their core, common legal issues, claims and agreements.

The Indemnification Action is but a part of billions of dollars in assets and claims that LBHI administers and seeks to liquidate to benefit its creditors. Before LBHI filed bankruptcy, these Defendants (and other defendants in the Indemnification Action) (collectively, "Sellers") sold or brokered the sale of defective mortgage loans into LBHI's loan sale and securitization channels, which LBHI then sold to third-parties. Those third-parties filed multi-billion dollar claims in LBHI's bankruptcy seeking damages for the defective loans. As LBHI resolved third-party creditors' demands in the claims reconciliation process, those demands triggered the Sellers' obligation to indemnify LBHI.

LBHI filed the Indemnification Action as part of a comprehensive collection process involving, potentially, thousands of similar indemnification claims ("Indemnification Claims") arising from 2014 settlements ("GSE Settlements") in the Bankruptcy Court for this District ("Bankruptcy Court") between LBHI and the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac," and with Fannie

Mae, "GSEs"), as well as a 2018 settlement ("RMBS Settlements") with Residential Mortgage Backed Securities Trustees ("RMBS Trustees").[2]

Defendants previously sought to escape the jurisdiction of the Bankruptcy Court. With respect to the GSE Indemnification Claims, on February 18, 2016, Defendant Standard Pacific filed a motion to dismiss the action based upon statute of limitations grounds, and the Bankruptcy Court denied the Motion on April 21, 2016. *See* Mov. Br. at 4-5. On June 15, 2017, Defendants UAMC and Eagle Mortgage also filed motions to dismiss based upon claim and issue preclusion, and those motions were denied on October 31, 2018. *Id*. at 4-5. Finally, on March 31, 2017, Standard Pacific joined an omnibus motion to dismiss nearly all of the GSE-related adversary proceedings. That motion also was denied on August 13, 2008.

As a result of the RMBS Settlements, LBHI brought new actions, commencing in October 2018, against defendants that were not facing claims arising from the GSE Settlement, and filed supplemental complaints against certain of the existing defendants in the GSE Indemnification Cases, including these Defendants. Since that time, the Bankruptcy Court has entered several case management and discovery-relate Orders governing the initial stages of the case, and written discovery has commenced.[3] LBHI has settled with several Sellers and dismissed their cases.

---

[2] On February 3, 2016, LBHI filed in the Bankruptcy Court an Omnibus Complaint seeking contractual indemnification against approximately 140 loan originators or brokers, arising out of the GSE Settlements. *Lehman Bros. Holdings Inc. v. 1st Advantage Mortg., LLC et al.,* Adv. Pro. No. 16- 01019-SCC. Beginning in December 2018, LBHI filed additional or supplemental complaints to add Indemnification Claims arising from the RMBS Settlements, raising the total number of defendants to approximately 200. Amended Case Management Order, *Lehman Bros. Holding Inc. v. 1st Advantage Mortgage LLC (In re Lehman Brothers Holdings),* Adv. Pro. No.16-01019 (SCC) (Bankr. S.D.N.Y. Mar. 13, 2019) Dkt. No. 825. Lawlor Decl., Exh. B.

[3] *See* Case Management Order ("CMO") & Amended CMO, *Lehman Bros. Holdings Inc. v. 1st Advantage Mort. LLC (In re Lehman Bros. Holdings Inc.),* Adv. Proc. No. 16-01019 (SCC), (Bankr. S.D.N.Y.) Dkt. Nos. 305, 825, Lawlor Decl., Exhs. C & B.

The claims against Defendants are also part of an active, comprehensive ADR process managed by the Bankruptcy Court, and more than 200 more defendants face the same claims before that court. Efficiency, economy, and uniformity concerns weigh strongly *in favor* of the Bankruptcy Court retaining control. The asserted grounds for withdrawal are nothing more than camouflage for another effort to delay the process.

For the reasons set forth below, the Withdrawal Motion should be denied.

## STATEMENT OF FACTS

### A. The Underlying Dispute with Defendants

This dispute arises from the Defendants' sale of residential mortgage loans to LBHI's assignor, Lehman Brothers Bank, FSB ("LBB"). The Agreements set forth (i) duties and obligations of the parties with respect to the purchase and sale of mortgage loans, (ii) representations and warranties concerning the individual mortgage loans, and (iii) Defendants' indemnification obligations.[4] Pursuant to the Agreements, Defendants sold and/or brokered to LBB the loans at issue in this action. LBB then sold the loans, and assigned its rights, to LBHI.

### B. The Indemnification Claims Arise From Bankruptcy Court Claims Litigation

The Debtors comprised what was once the fourth largest investment bank in the United States. Upon filing for bankruptcy on September 15, 2008, and shortly thereafter, the Debtors commenced one of the largest and most complicated Chapter 11 cases in history.

By Order dated December 6, 2011 ("Confirmation Order"), *In re Lehman Bros. Holding Inc*., No. 08-13555 (SCC) (Bankr. S.D.N.Y.) Dkt. No. 23023, the Bankruptcy Court confirmed

---

[4] *See* Mov. Br. 2 n.1; *see also* Amended Complaint, *Lehman Bros. Holdings Inc. v. Eagle Mortgage Holdings, LLC*, Adv. Pro. No. 16-01383 (SCC) (Bankr. S.D.N.Y. Dec. 20, 2018) Dkt. No. 48, Lawlor Decl., Exh. D*;* Amended Complaint, *Lehman Bros. Holdings Inc. v. Standard Pacific Mortgage, Inc.*, Adv. Pro. No. 16-01002 (SCC) (Bankr. S.D.N.Y. Dec. 20, 2018) Dkt. No. 85, Lawlor Decl., Exh. E; Amended Complaint, *Lehman Bros. Holdings Inc. v. Universal American Mortgage Company*, LLC, Adv. Pro. No. 16-01297 (SCC) (Bankr. S.D.N.Y. Dec. 20, 2018) Dkt. No. 46, Lawlor Decl., Exh. F (collectively the "Standard Pacific Complaints").

the Plan, which became effective on March 6, 2012 ("Effective Date"). The Plan provides for the orderly liquidation of all the property of the Debtors, which re-vested on the Effective Date for the benefit of creditors and equity holders. Post-confirmation, the equity in LBHI is held 100% by a trust defined in the Plan as the "Plan Trust." The Plan Trust is charged with liquidating the assets of all Debtors, including LBHI. *See* Plan § 7.4. Moreover, the Plan provides that the Plan Administrator "shall wind-down, sell and otherwise liquidate assets of the Debtors . . . in accordance with Section 6.1(b)(iii) of the Plan." *Id.* §§ 1.115, 7.6. The Plan Administrator has the sole authority to liquidate assets, including the prosecution of Litigation Claims, to maximize distributions to creditors. *Id.* § 6.1(b)(iii) and (iv).

LBHI retains all "Litigation Claims" for any and all claims and causes of action, whether "liquidated or *unliquidated*, fixed or *contingent*, matured or *unmatured . . .* existing or *hereafter arising*, in law, equity, or otherwise, *based in whole or in part upon any act or omission or other event occurring prior to the Effective Date*. Plan § 1.17 (emphasis added). The Plan also preserves LBHI's right to assert Litigation Claims for reimbursement and indemnification on account of Distributions made to holders of Allowed Claims. Plan § 8.14(b). The two provisions encompass the Indemnification Claims. The Confirmation Order restates LBHI's "rights to assert or prosecute Litigation Claims for reimbursement, indemnification." Confirmation Order ¶ 79. The Plan thus envisions the post-confirmation monetization of the Indemnification Claims, including those maturing after allowance of proofs of claim filed by third-party purchasers of defective loans.

In January and February 2014, the Bankruptcy Court approved LBHI's multi-billion dollar GSE Settlements, which resolved the proofs of claim that the GSEs asserted relating to LBHI's sale of defective mortgage loans from to the GSEs. As a result of the settlements, LBHI

has pursued Indemnification Claims.[5] The Plan Administrator expects to obtain substantial recoveries in connection with the Indemnification Claims, which ultimately will be distributed to creditors under the Plan.

Noting that "LBHI holds contractual claims for indemnification and/or reimbursement against approximately 3,000 counterparties . . . involving more than 11,000 mortgage loans by virtue of settlements between LBHI and [Fannie Mae] . . . and between LBHI and [Freddie Mac]," the Bankruptcy Court entered the Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Sellers dated June 24, 2014 ("ADR Order"). The ADR Order directed parties to comply with the mediation procedures for all of the Indemnification Claims. *See id*. at 2. LBHI negotiated specifically with Defendants UAMC and Standard Pacific and entered into a Modified ADR Order. *See* Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Universal American Mortgage Company, LLC, Standard Pacific Mortgage, Inc., Shea Mortgage, Inc., CTX Mortgage Company, LLC, PrimeLending, A PlainsCapital, Company, Allied Mortgage Group, Inc., and DHI Mortgage Company, LTD., (the "Modified ADR Order"), *In re Lehman Bros. Holdings Inc., et al*., Case No.08-13555 (Bankr. S.D.N.Y. July 21, 2014) Dkt. No. 45315, Lawlor Decl., Exh. G. The procedures contemplated service of an "Indemnification ADR Package" on Sellers, which included a notice of claims and demand for participation. ADR Order at 3.

---

[5] The GSE Settlements require the GSEs to provide LBHI with documents and information to enable LBHI to pursue Indemnification Claims against Sellers. *See* Fannie Settlement § 3.1; Freddie Settlement § 4.1. The GSE Settlements also assist LBHI in bringing the Indemnification Claims. See Fannie Settlement §§ 3.1-3.6 (provisions requiring Fannie Mae to assist LBHI in pursuing "Rep and Warranty Default" claims); Freddie Settlement §§ 4.1-4.6 (provisions to assist LBHI in pursuing claims related to "Liquidated Rep and Warranty Default Loans"). *In re Lehman Bros. Holdings Inc., et al*., Case No.08-13555 (Bankr. S.D.N.Y.) Dkt. Nos. 42153, 42754.

On February 3, 2016, LBHI filed the Adversary Proceedings against 140 loan sellers to prosecute several thousand loan-level claims in an efficient, uniform, and cost-effective manner. Adv. Proc. No. 16-01019 (SCC), Dkt. 1. In December 2016, LBHI severed the Adversary Proceedings into 101 individual complaints against 107 counterparties. On November 1, 2016, the Court entered a Case Management Order in the Adversary Proceedings ("CMO"), which allowed each defendant to file threshold motions such as under Fed. R. Civ. P. 12(b), based on venue, jurisdiction, and/or failure to state a claim. *See* Adv. Proc. No. 16-01019 (SCC), Dkt. 305, Lawlor Decl., Exh. C. Most of the defendants, including Defendant Standard Pacific, filed multiple and omnibus motions to dismiss, which were denied.

Most omnibus defendants' urged the District Court to engage in "*de novo*" review of the denial and most also filed three (3) motions for leave to appeal the very same Order. In a consolidated action, *In re Lehman Bros Holdings Inc*., 18-CV-8986-VEC, 2019 WL 2023723 (S.D.N.Y. May 8, 2019) ECF 54 ("*Security National*"), Judge Caproni denied both the request seeking *de novo* review and leave to appeal by Opinion and Order dated May 8, 2019, stating, in relevant part:

> [T]his motion amounts to nothing more than a question of timing. Assuming that LBHI's claims are non-core matters, this Court will review the Bankruptcy Court's findings after the Bankruptcy Court fully hears these cases and submits proposed findings of fact and conclusions of law in order for this Court to enter final judgment. The above-litigation practices are in addition to five (5) earlier attempts by certain defendants to either withdraw the reference or obtain leave to appeal.

*Id*. at 24; *see* Lawlor Decl., Exh. H.

On March 15, 2018, Judge Chapman held a twenty-two (22) day hearing resulting in entry of the Order Estimating Allowed Claim Pursuant to RMBS Settlement, dated March 15,

2018 (Case No. 08-13555, ECF No. 57785), resolving the majority of the RMBS Trustee claims. LBHI also settled several other RMBS Trustee claims as permitted by the Plan.[6]

After the RMBS Settlement, LBHI sought to amend the original ADR order to include the claims that were settled in the RMBS Trustee Settlement. On July 28, 2018, the Bankruptcy Court entered an Amended ADR Order. *See In re Lehman Bros. Holdings Inc.*, et al., Case No. 08-13555, Dkt No. 50465 (S.D.N.Y. July 28, 2015). Defendants UAMC and Standard Pacific negotiated and agreed to an Amended Modified ADR Order. *See* Amended Alternative Dispute Resolution Procedures Orders for Indemnification Claims of the Debtors Against Certain Mortgage Loan Sellers, *In re Lehman Bros. Holdings Inc., et al.*, Case No.08-13555 (Bankr. S.D.N.Y. Nov. 7, 2018), Dkt No. 59066, Lawlor Decl., Exh. I. Defendant Standard Pacific is required to engage in mediation with LBHI in an effort to resolve the indemnification claims arising from both the RMBS Trustee Settlement and the GSE Settlement.

### C. Three Different District Judges in This District Previously Have Rejected Motions to Withdraw the Reference in Related Indemnification Cases

In three adversary proceedings involving Indemnification Claims against other Sellers, three different District Judges in this Court denied motions to withdraw the reference and reasoned that the interests of efficiency and uniformity are best served by leaving Indemnification Claims, and all issues relevant to them, before the Bankruptcy Court. *See Hometrust*, 2015 WL 891663, at *4 (Engelmayer, J.); *accord LHM*, 2015 WL 2337104, at *2 (Wood, J.); see *iFreedom*, No. 16-cv-423, Order, Dkt. No. 29 at 6 (Caproni, J.), Lawlor Decl., Exh. A ("[t]here are obvious efficiencies to be gained by centralizing the indemnification litigation in the Bankruptcy Court"). "Judge Chapman has . . . far greater familiarity with the

---

[6] *See* RMBS Trust Settlement Agreement, entered into as of June 25, 2018, between LBHI and Wilmington Trust National Association; Allowed Proof of Claim numbers: 720000, 720001, 720002, 720003, 720004, 720005,

underlying facts . . . and she likely has a superior understanding of the law and theories relevant to the parties' dispute[, which] will contribute to swifter resolution of the claims at issue . . . [r]egardless of whether a particular count is core or non-core." *Hometrust*, 2015 WL 891663, at *4 (Engelmayer, J.) (internal citations omitted). This reasoning remains unaffected by the filing of supplemental complaints involving the RMBS Settlements.

## ARGUMENT

I. **DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN TO DEMONSTRATE THAT WITHDRAWAL OF THE REFERENCE IS WARRANTED**

### A. "Cause" Does Not Exist to Withdraw the Reference

Defendants seek permissive withdrawal of the reference. While Defendants also attempt to argue for mandatory withdrawal of the reference, Defendants cannot remotely meet the applicable standard.

The Bankruptcy Code's jurisdictional provisions governing permissive withdrawal states that "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). In *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095 (2d Cir. 1993), the Second Circuit established the considerations governing such permissive withdrawal: (i) whether the action is core or non-core; (ii) judicial efficiency and economy; (iii) uniformity in bankruptcy administration; (iv) economical use of the debtors' and creditors' resources; (v) reduction of forum shopping; (vi) expediting the bankruptcy process; and (vii) the presence of a jury demand. *Id.* at 1101. After the Supreme Court's ruling in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), in the core/non-core analysis, courts also consider whether the

720006, 720007, 720008, 720009, 720010, 720011, 720012, 720013, 720014, 720015, 720016, 720017, 22773.04, 24792, 24810, 720020, 720025, 720021, 720024, 720022, 720023, 720018, 720019.

9

Bankruptcy Court has constitutional authority to enter final judgment in the case. *See Moore Macro Fund, LP v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings Inc.)*, 2014 WL 4635576, at *1 (S.D.N.Y. Sept. 5, 2014).

Permissive motions to withdraw the reference are disfavored. *See, e.g., Kirschner v. Agoglia*, 476 B.R. 75, 83 (S.D.N.Y. 2012). This Court's Standing Order of Reference indicates a strong preference for obtaining the Bankruptcy Court's views and experience on a matter. *See* Amended Standing Order of Ref. M-431, dated Jan. 31, 2012 (Preska, Acting C.J.) ("If a bankruptcy judge or district judge determines that entry of a final order or judgment by a bankruptcy judge would not be consistent with Article III . . . in a particular proceeding . . . determined to be a core matter, the bankruptcy judge shall, unless otherwise ordered by the district court, hear the proceeding and submit proposed findings of fact and conclusions of law").

Thus, courts in this District usually deny permissive motions to withdraw the reference. This Court has repeatedly identified the obstacles permissive withdrawal motions face, rejecting more than ten (10) in the Debtors' cases overall,[7] as well as the three (3) by Sellers facing the same claims as here, *iFreedom*, No. 16-cv-423, Order, Dkt. No. 29 (Caproni, J.), Lawlor Decl. Exh. A, *Hometrust*, 2015 WL 891663 (Engelmayer, J.), and *LHM*, 2015 WL 2337104 (Wood, J.). The grounds for withdrawal are weaker here as Defendants already actively participated in the litigations, having independently moved to dismiss and joined omnibus motions to dismiss in

---

[7] *See Moore Macro Fund, LP*, 2014 WL 4635576; *Lehman Bros. Holdings Inc. v. Wellmont Health Sys.*, 2014 WL 3583089 (S.D.N.Y. July 18, 2014); *Lehman Bros. Holdings Inc. v. Intel Corp.*, 18 F. Supp. 3d 553 (S.D.N.Y. 2014); *Lehman Bros. Spec. Fin. Inc. v. Fed. Home Loan Bank of Cin.*, No. 1:13-cv-04121, slip op. (S.D.N.Y. Mar. 27, 2014), Lawlor Decl., Exh. J; *Lehman Bros. Holdings Inc. v. Credit Agricole Corp. & Inv. Bank*, No. 1:13-cv-03373, slip op. (S.D.N.Y. Aug. 8, 2013), Exh. K; *Lehman Bros. Holdings Inc. v. Ford Global Treasury, Inc.*, No. 1:12-cv-08201, slip op. (S.D.N.Y. Apr. 8, 2013), Exh. L; *Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A.*, 480 B.R. 179 (S.D.N.Y. 2012) (reference later withdrawn after discovery was completed), Exh. M; *Michigan State Housing Dev. Authority v. Lehman Bros. Derivative Prods., Inc.*, No. 11-3392, slip op. (S.D.N.Y. Sept. 14, 2011), Exh. N; *Veyance Techs., Inc. v. Lehman Bros. Spec. Fin., Inc.*, 2009 WL 4496051 (S.D.N.Y. Dec. 3, 2009); *Wong v. HSBC USA Inc.*, No. 09-6841, slip op. (S.D.N.Y. Oct. 14, 2009), Exh. O.

separate motions. Now, Defendants are utilizing this motion as a procedural gambit to escape Bankruptcy Court jurisdiction.

### B. Three Other District Judges in This Court Have Previously Held That The Nature of This Case Does Not Require the Reference to Be Withdrawn

Defendants argue that the reference should be withdrawn as LBHI's claims against them are legal in nature and seek monetary damages. *See* Mov. Br. at 11. To support that proposition, Defendants cite two cases from other districts where a court withdrew the reference, in part, because a party was entitled to a jury trial. *See id.* (*citing In re Lenders Abstract & Settlement Serv. Inc.*, 493 B.R. 385, 397 (E.D.N.Y. 2013); *In re Weinstein*, 237 B.R. 567, 569 (Bankr. E.D.N.Y. 1999)). LBHI does not dispute that the claims at issue could result in a right to a jury trial, but the nature of the claims in and of themselves does not require the Court to withdraw the reference.

Other District Judges in this Court already have concluded that, for exactly these types of claims, "the proper course is for the Bankruptcy Court to issue proposed findings of fact and conclusions of law to be reviewed by the district court *de novo*." *See iFreedom*, 16-cv-00423, Dkt. No. 29 at 5 (Caproni, J.) (internal quotations omitted). Likewise, Defendants' request for a jury trial does not compel withdrawal at this stage. Given the Bankruptcy Court's familiarity with the issues, and the fact that discovery already is taking place, the possibility that there could be a trial at some point is not sufficient grounds for withdrawal. *See, e.g., Schneider v. Riddick (In re Formica Corp.)*, 305 B.R. 147, 150 (S.D.N.Y. 2004) ("While the plaintiff has a right to a jury trial, such a right does not compel withdrawing the reference until the case is ready to proceed to trial"); *Hometrust*, 2015 WL 891663, at *5 (Engelmayer, J.) (stating "the need for a jury trial is wholly theoretical").

Thus, neither the nature of the claims nor the possibility of a jury trial require the reference to be withdrawn.

### C. The *Orion* Factors Mandate the Denial of the Motion to Withdraw the Reference

Applying the *Orion* factors demonstrates that permissive withdrawal is not appropriate. Regardless of whether the Bankruptcy Court has final adjudicative authority or whether the Indemnification Action is a "core" or "non-core" proceeding, the Bankruptcy Court has post-confirmation jurisdiction. This Court should, therefore, consider the remaining *Orion* factors, which demonstrate that withdrawing the reference at this time would be both premature and highly inefficient, and would *not* promote uniformity.

#### 1. Whether or Not the Indemnification Action Is Core, the Bankruptcy Court Should Continue to Exercise Its Jurisdiction

Focusing heavily on the fact that the Indemnification Claims are state law contract claims, the Withdrawal Motion analyzes the Plan Administrator's complaint under the traditional core versus non-core distinction flowing from 28 U.S.C. Section 157. LBHI does not assert that the Indemnification Action involves a "core" claim. Moreover, the core or non-core nature of a matter "may not be particularly relevant" in cases such as this one, involving post-confirmation jurisdiction. *In re Park Ave. Radiologists, P.C.*, 450 B.R. 461, 468 (Bankr. S.D.N.Y. 2011). By focusing so intently on the non-core nature of the Indemnification Claims, Defendants are essentially advocating that all non-core litigations only be addressed by Article III courts. Every District Judge in this Court that has reviewed challenges to the Bankruptcy Court's post-confirmation subject matter jurisdiction in the LBHI case has rejected that challenge, including the recent *Security National* decision. *See* Opinion and Order, *Security National*, 18-CV-8986-VEC, 2019 WL 2023723, at 24 ECF 54 (Caproni, J.), Lawlor Decl. Exh. H.

The Bankruptcy Court's authority or lack of authority to enter final judgments does not dictate whether it should exercise jurisdiction. Defendants' argument that "the Court **must** withdraw the reference so that Defendants may seek to have this matter disposed of by a final judgment of the District Court," is incorrect and has been rejected by at three other District Judges in this Court. As stated in the three previous opinions rejecting motions to withdraw, the Bankruptcy Court may issue recommendations upon which the district will then decide to enter, alter, or deny final relief. *iFreedom*, No. 16-cv-423, Order, Dkt. No. 29 (Caproni, J.), *Hometrust*, 2015 WL 891663 (Engelmayer, J.), and *LHM*, 2015 WL 2337104 (Wood, J.). Additionally, in the recent *Security National* opinion denying leave to appeal, Judge Caproni reiterated that the Bankruptcy Court should be allowed to shepherd the Indemnification Cases up to the point of final judgment. *See* Opinion and Order, *Security National*, 18-CV-8986-VEC, at 24-25 (S.D.N.Y. May 8, 2019) ECF 54.

Courts in this District routinely allow the bankruptcy courts to develop the record and issue proposed findings of fact and conclusions of law as to non-core matters, as permitted by 28 U.S.C. § 157(c). *See Lehman Bros. Holdings Inc. v. Intel Corp.*, 18 F. Supp. 3d 553. 558 (S.D.N.Y. 2014). This fundamental principle was emphasized in all three decisions to deny the motions to withdraw. *See iFreedom,* 16-cv-00423, Dkt. No. 29 at *5 ("The fact that the Bankruptcy Court cannot finally adjudicate this dispute does not require the Court to withdraw the reference. Rather, the proper course, is for the Bankruptcy Court to issue proposed findings of fact and conclusions of law to be reviewed by the district court *de novo*") (internal quotations omitted); *Hometrust*, 2015 WL 891663, at *4; *accord LHM*, 2015 WL 2337104, at *2. Consequently, Defendants' argument that LBHI's claims against it are non-core is not meaningful, let alone determinative. *See Lehman Bros. Holdings Inc. v. Wellmont Health Sys.*,

2014 WL 3583089, at *4 ("considerations of judicial efficiency, suggest that . . . this matter should be left to the bankruptcy court in the first instance").

While Defendants cite the Supreme Court case of *Stern v. Marshall*, 131 S. Ct. 2594, the fact pattern of *Stern* does not exist here, as *Stern* only dealt with whether bankruptcy courts have adjudicative authority over counterclaims against creditors' proofs of claim. More to the point is *Executive Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165 (2014), where the Supreme Court rejected Defendants' analysis that Article III judges must exercise direct control from the beginning of the case. In *Arkison*, the Supreme Court clarified that *Stern* was concerned only with Constitutional limitations on a bankruptcy court's ability to enter final judgments against non-creditors, not how the courts were to proceed in light of that limitation. *Id.* at 2168. *Arkison* expanded on *Stern* and affirmed the bankruptcy courts' continued power and authority to exercise judicial power in bankruptcy-related cases just shy of final judgment. Even for non-core matters, the *Arkison* Court held that "[t]he bankruptcy court should hear the proceeding and submit proposed findings of fact and conclusions of law to the district court for de novo review and entry of judgment." *Id.* at 2173.

Even if it cannot finally adjudicate the Indemnification Claims, the Bankruptcy Court still should retain jurisdiction over the case up until trial. The Bankruptcy Court has unique knowledge of the claims as a result of events in the bankruptcy, such as its consideration and approval of the GSE Settlements, the approval of the ADR Orders, the administration of similar cases against the Sellers, and continued oversight of the liquidating Plan. Other District Judges in this Court have recognized the Bankruptcy Court's unique expertise. *See Hometrust* 2015 WL 891663, at *4 (Engelmayer, J.) ("Judge Chapman has, to say the least, far greater familiarity with the underlying facts of the Lehman bankruptcy than this Court, and she likely has a superior

understanding of the law and theories relevant to the parties' dispute. 'This specialized knowledge will contribute to swifter resolution of the claims at issue'"). *See also iFreedom*, 16-cv-00423, Dkt. No. 29 at p. 6 (Caproni, J.) ("Judge Chapman, is intimately familiar with the facts of the Lehman cases and the legal theories involved in this adversary proceeding").

### 2. Efficiency, Uniformity, and Economy Should Again Preclude Withdrawal

Allowing the Bankruptcy Court to continue to oversee the Indemnification Claims and the litigations already filed, including the Indemnification Action, would undoubtedly further the goals of efficiency, uniformity, and economy. Interests of efficiency especially favor Bankruptcy Court oversight of the Indemnification Action in light of the omnibus adversary proceeding that LBHI filed against more than 200 Sellers based on similar Indemnification Claims. *See Hometrust*, 2015 WL 891663, at \*4.[8] And the LBHI Bankruptcy Court is not alone in being utilized as the clearinghouse for multiple cases. *See, e.g., Residential Funding Co., LLC v. Greenpoint Mortg. Funding, Inc. (In re Residential Cap., LLC)*, 519 B.R. 593, 605 (S.D.N.Y. 2014). By contrast, the efficiency of the bankruptcy process will be hindered if each Seller is permitted to withdraw the reference and transfer the case to the district of the individual Seller's choosing.

Other District Judges in this Court have consistently invoked the efficiency, uniformity, and economy factors to deny permissive withdrawal in the Debtors' cases. *See, e.g., In re Lehman Bros. Holding Inc.*, 18-CV-8986-VEC, Dkt No. 54 ("Given the complexities of these cases, coordinating pretrial matters before a single judge is clearly the most efficient way to

---

[8] *See, also In re Jacoby & Meyers-Bankr. LLP*, No. 14-10641 (SCC), 2017 WL 4838388, at \*5 (S.D.N.Y. Oct. 25, 2017) (denying withdrawal where "the Bankruptcy Court has already developed substantial familiarity with the facts underlying this case"); *In re Motors Liquidation Co.,* 538 B.R. 656, 665 (S.D.N.Y. 2015) (finding that "there are no efficiency gains to be made by withdrawing the reference," where the bankruptcy court was "undoubtedly more familiar" than the district court with the issues presented); *In re Extended Stay, Inc.*, 466 B.R. 188, 206 (S.D.N.Y. 2011) ("Judicial economy would be promoted by allowing the bankruptcy court, already familiar with the extensive record in this case, to initially adjudicate these cases").

proceed"); *iFreedom*, 16-cv-00423, Dkt. No. 29 at *6 ("There are obvious efficiencies to be gained by centralizing the indemnification litigation in the Bankruptcy Court"); *Hometrust*, 2015 WL 891663, at *5 ("efficiency and uniformity are best served by maintaining the reference during the initial stages of this adversary proceeding*")*; *Moore Macro Fund, LP*, 2014 WL 4635576, at *1 ("Keeping this matter in the bankruptcy court promotes judicial economy"); *Credit Agricole Corp. & Inv. Bank*, 1:13-cv-03373, Lawlor Decl., Exh. K at 8 ("[e]fficiency concerns also weigh strongly in favor of the denial"). The Bankruptcy Court's role has been so valuable that in one of the only successful withdrawal motions in the Debtors' cases (granted on mandatory grounds), the District Court referred the matter back to the Bankruptcy Court for a report and recommendation. *See In re Lehman Bros. Holdings Inc.*, 2013 WL 6633431, at *3 (S.D.N.Y. Dec. 17, 2013).

The Indemnification Action constitutes but a few of the potentially thousands of Indemnification Claims that arise from the GSE and RMBS Settlements. The Bankruptcy Court is familiar with the Indemnification Claims because it handled the claims litigation, considered and approved the GSE and RMBS Settlements, the twenty-two day evaluation hearing it had in connection with the RMBS Settlement, and the pending litigation. Having the Bankruptcy Court serve a clearing house for such claims, through the ADR Order or litigation, promotes uniformity. Any report and recommendation issued by the Bankruptcy Court would only assist the District Court, assuming any such claims ever reach final adjudication. Further, the previous motions to withdraw the reference were each assigned to different District Court judges, suggesting that withdrawing the reference in and of itself would lead to inefficiency.

Defendants argue that because state law, as opposed to bankruptcy law, governs the Indemnification Claims, uniformity will not be promoted unless the reference is withdrawn.

Mov. Br. at 15. To support their assertion, Defendants cite a Delaware case in which the bankruptcy court concluded it should not exercise jurisdiction to decide claims involving Missouri personal injury law, and the district court confirmed that ruling on a motion to withdraw the reference. *See In re Visteon Corp.*, No. 09-11786, 2011 WL 1791302, at *4 (D. Del. May 9, 2011). The Indemnification Action has none of the issues facing the court in *Visteon* as it involves contractual indemnification claims involving the identical legal principles arising from the same or similar sets of operative facts over which the Bankruptcy Court has retained jurisdiction. The Bankruptcy Court is "intimately familiar with the facts of the Lehman cases and the legal theories involved in this adversary proceeding." *iFreedom*, 16-cv-00423, Dkt. No. 29, at *6.

Defendants further argue that judicial economy will be promoted if the reference is withdrawn because this Court can enter final judgements. *See* Mov. Br. at 12. In support, Defendants cite to *LightSquared Inc. v. Deere & Co.*, No. 13-Civ- 8157, 2014 WL 345270, at *5 (S.D.N.Y. Jan. 31, 2014), for the proposition that the a single proceeding in the district court could save time and money. In *LightSquared*, in *dicta* after deciding *mandatory* withdraw was required, the court stated it would be more efficient for the case to proceed in the district court because the district court already was handling a case that arose from the "same operative facts." *Id.* at *1, 5. In this case, it is the *Bankruptcy Court*, *not* the District Court, that is handling *hundreds* of cases that arose from the same core of operative facts. Thus, even *LightSquared's dicta* suggests that efficiencies auger for continuing the litigation in Bankruptcy Court.

Despite Defendants' assertions, allowing the Bankruptcy Court to handle these issues would result in substantial efficiencies. As the Court observed in the nearly identical *Hometrust* case, "the Bankruptcy Court may be able to streamline or centralize discovery across the various

indemnification actions." *Hometrust*, 2015 WL 891663, at \*3. "If the Bankruptcy Court ultimately reaches a decision in th[e] case, the resulting report and recommendation will save this Court, and the parties, an immense amount of time and effort." *Id.* at \*4. Proceeding in the Bankruptcy Court would also promote "intra-case uniformity" given LBHI's ability to initiate "more than 3,000 parallel adversary proceedings" in which "there are likely to be many [] common claims and defenses similar or identical to" the claims against Defendants. *Id.* Defendants also ignore the accepted proposition that motions to withdraw the reference are disfavored early in litigation. *See, e.g., Enron Corp. v. The Belo Co. (In re Enron Corp.)*, 317 B.R. 232, 235 (S.D.N.Y. 2004); *Mishkin v. Ageloff (In re Adler, Coleman Clearing Corp.)*, 270 B.R. 562, 566 (S.D.N.Y. 2001).

Although Defendants have stressed particular "facts" as supporting withdrawal, *see* Mov. Br. at 13-14, most notably, the alleged unique nature of each loan sold by the Sellers, that argument is unpersuasive. While individual Sellers undoubtedly may have slightly varying facts and defenses based on the particular loans at issue – indeed, even within a particular Seller's group of loans there may be differences – that argument ignores the overarching common legal issues and factual issues already identified by the parties. Clearly, the Bankruptcy Court's analysis of the law of contractual indemnification will vary little among defendants. And reviewing the complaints demonstrates that the same or substantially contractual provisions apply to each of them. *See* supra fn. 4. The Bankruptcy Court also is overseeing written discovery that already takes into account that much of the discovery will be common to all defendants. *See In re Lehman Brothers Holding Inc.*, 16-01019-scc, CMOs Dkt. Nos. 305, 825, Lawlor Decl., Exhs. B & C. And as the recent appellate practice before this Court in *Security*

*National* demonstrates, there are an abundance of common legal issues that the Bankruptcy Court has considered on an omnibus basis and will likely consider in the future.

Finally, Defendants repeat the argument that the reference should be withdrawn as they may be entitled to a jury trial, but that is not the law in this District. "A district court is not compelled to withdraw a reference simply because a party is entitled to a jury trial." *In re Enron Power Mktg., Inc.*, No. 01 CIV.7964, 2003 WL 68036, at *6 (S.D.N.Y. Jan. 8, 2003) (internal quotations omitted).

### 3. Denying the Motion to Withdraw Will Prevent Forum Shopping

Defendants claim that they are not forum shopping because "the District Court is the only court that can enter an order." *See* Mov. Br. 15. That is an erroneous statement as the Bankruptcy Court is able to enter interlocutory orders at all times, and also is able to issue preliminary rulings that this Court may later review *de novo*. *See Lehman Bros. Holdings Inc. v. Wellmont Health Sys.*, No. 14-CV1083 (LGS), 2014 WL 3583089, at *4 (S.D.N.Y. July 18, 2014) (stating "experience strongly suggests that having the benefit of [a] report and recommendation will save the district court and the parties an immense amount of time").

Defendants also suggest that the Bankruptcy Court is not the proper forum as Defendants could not have "reasonably foresee[n]" that they would have to litigate in Bankruptcy Court. In support of their argument, movants cite a case where a plaintiff's claims for breach of contract ripened *before* a party filed for bankruptcy. *See In re Lawrence Group, Inc.,* 285 B.R. 784, 788 (N.D.N.Y 2002). Here, LBHI's claims were contingent and did *not* ripen until *well after* the Debtors had filed for bankruptcy. Due to the nature of the contingent claims, it was entirely foreseeable that Defendants would have to litigate in Bankruptcy Court.

Finally, Defendants have already made multiple attempts to escape Bankruptcy Court jurisdiction. For example, Defendants joined a motion to dismiss for lack of jurisdiction. *See* Mov. Br. at 4. When fully considering the record, it is impossible to conclude anything other than Defendants are engaging in forum shopping.

## II.    MANDATORY WITHDRAWAL IS NOT APPLICABLE

At one point, Defendants claim that "the Second Circuit has recognized that, where a litigant has a bona fide right to a jury trial in a non-core matter, withdrawal of the reference is essentially mandatory." In making this argument, Defendants misstate the legal standard by which this Court determines mandatory withdrawal.

This Court must withdraw a reference when "substantial and material consideration of federal statutes other than the Bankruptcy Code is necessary for the resolution of a case or proceeding." *In re Combustion Equip. Assocs., Inc.*, 67 B.R. 709, 711 (S.D.N.Y. 1986). There are *no* federal statutes, other than the Bankruptcy Code, involved in this case, and Defendants have not identified any. Defendants' brief is replete with statements that the matter before the Court arises out of state law, and *not* federal law. *See* Mov. Br. at 1, 4, 8, and 9. Therefore, by their own admission, grounds for mandatory withdrawal *cannot* exist.

## III.    THE MOTION IS UNTIMELY AND MERELY A LITIGATION TACTIC

### A.  Defendants' Motion Is Untimely and Disregards the Underlying Policy for Timely Filing Motions to Withdraw the Reference

Defendants' motion is untimely as it could have been made years earlier. Under 28 U.S.C. Section 157(d), a district court "may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." A motion to withdraw the reference must be timely filed to "protect the court and parties in interest from useless costs and disarrangement of the calendar, and to prevent

unnecessary delay and the use of stall tactics." *In re Texaco Inc.*, 84 B.R. 911, 919 (S.D.N.Y. 1988) (*citing In re Giorgio*, 50 B.R. 327 (D.R.I. 1985)). Courts apply a "flexible and case-specific" standard in determining timeliness of a motion to withdraw a reference. *In re Enron Creditors Recovery Corp.,* 410 B.R. 374, 381 n. 9 (S.D.N.Y.2008).

For a motion to withdraw the reference to be timely, however, the moving part must make its motion "as soon as possible after [it] has notice of the grounds for withdrawing the reference." *In re The VWE Grp., Inc.*, 359 B.R. 441, 446 (S.D.N.Y. 2007) (*citing Official Comm. of Unsecured Creditors of FMI Forwarding Co. v. Union Transp. Corp. (In re FMI Forwarding Co.)*, No. 04 Civ. 630, 2005 WL 147298, at *6 (S.D.N.Y. Jan.24, 2005*); Kentile Floors v. Congoleum Corp. (In re Kentile Floors )*, 1995 WL 479512, at *2 (S.D.N.Y. Aug.10, 1995)). To determine timeliness, courts consider the time the party had notice to file and "have generally agreed that eighteen months is grounds for denial." *See In re Ionosphere Clubs, Inc.*, No. 89-B-10448, 1995 WL 479480, at *3 (S.D.N.Y. Aug. 11, 1995) (collecting cases on timeliness). Further, this Court stated that it must "prevent [motions to withdraw the reference] from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court." *In re Kenai Corp.*, 136 B.R. 59, 61 (S.D.N.Y. 1992).

Defendants do not dispute that they were aware of the purported grounds to withdraw the reference in February 2016, when the complaints resulting from the GSE Settlements were filed. Nonetheless, it inexplicably waited for over three years and three months to file the motion. It also waited until long after several motions to dismiss were denied, and well after the filing of motions for leave to appeal.

Defendants suggest that the multiple years of motion practice on legal issues raised by the omnibus defendants and a lack of prejudice to LBHI still allows the Withdrawal Motion to be

timely. That argument applies the wrong standard. In examining timeliness, in addition to just the passage of time, courts should look to see if the motion is being used as a litigation tactic. *In re Kenai Corp.*, 136 B.R. 59, 61 (S.D.N.Y. 1992). In the case at bar, it is clear that Defendants are attempting an end-run around the Bankruptcy Court because they perceive that court to be an unfavorable forum based on the years of pre-answer and pre-discovery litigation.

Defendants also cite to an article allegedly reporting on the results of a "nationwide survey" as authority that the majority of courts favor withdrawal prior to pretrial proceedings. *See* Mov. Br. at 18. That is neither true (at least in connection with the LBHI case in this District) nor is it relevant. As noted previously, there have been more than ten (10) motions to withdraw the reference in the LBHI Chapter 11 Cases that have been denied. Defendants also do not, and cannot, argue that cases favoring early withdrawal are similar to these proceedings. In fact, the cases that Defendants rely upon, *Development Specialists, Inc. v. Akin Gump Strauss Hauer & Feld, LLP* 462 B.R. 457 (S.D.N.Y. 2011), and *Interconnect Tel. Servs., Inc. v. Farren*, 59 B.R. 397 (S.D.N.Y. 1986), are not applicable.

In *Development Specialists,* the court held that a delayed motion was timely because the parties were waiting for the Supreme Court to decide *Stern v. Marshall,* and after the decision was published, the parties began discussions as to whether withdrawing the reference was required. 462 B.R. 457 at 469. Critically, "[w]hen it became clear they could not agree on whether the reference should be withdrawn, the [defendant] promptly moved this Court for relief*." Id.* at 469. In *Interconnect Tel. Servs.*, the court stated that "defendants should have acted more promptly in moving for withdrawal" after they waited for a year. The court granted the withdrawal, however, as it was a single action in which judicial economy was best served by withdrawing the reference. 59 B.R. at 402.

In this action, the parties were not waiting for any intervening decisions, nor were there alleged discussions regarding withdrawal. The cases are not one-off actions, but part of a comprehensive, consolidated group of actions. Defendants simply delayed until they thought it advantageous to act. The Court should not reward the behavior.

**B. Defendants Cannot Distinguish Their Motion From the Earlier Requests For Withdrawal**

Defendants focus on *Hometrust,* just one of the prior withdrawal motions, Defendants attempt, but fail, to distinguish Judge Engelmayer's decision. Ultimately Defendants simply advocate outright rejection of the *Hometrust* Court's reasoning. Defendants posit five (5) grounds to reject the decision: (i) The Indemnification Action has "nothing to do with the complexities of the underlying bankruptcy," (ii) uniformity will not be achieved because each indemnification claim is unique, (iii) the "Bankruptcy Court is not necessarily 'immersed' in issues related to this litigation," (iv) that a coordinated action is likely impossible and not necessary, and (v) the ADR process has failed and the case will inevitably end up in District Court. *See* Mov. Br. at 4-5. None of these reasons should lead this Court repudiate its *Hometrust* decision.

As explained previously, each of Defendants' grounds already were considered and rejected, most recently by Judge Caproni in her *iFreedom* ruling. *See iFreedom*, 16-cv-00423, Dkt. No. 29, at 5-7. Judge Caproni confirmed that the Bankruptcy Court is immersed in the issues, even if they involve state-law claims. *Id.* at 5. Judge Caproni further concluded that "uniformity is also best served by permitting the Bankruptcy Court to adjudicate the indemnification actions" and that counterparty defences are "hardly unique." *Id.* at 6. The District Judge further explained that "Judge Chapman, is intimately familiar with the facts of the Lehman cases and the legal theories involved in this adversary proceeding" and that "[t]here are

obvious efficiencies to be gained by centralizing the indemnification litigation in the Bankruptcy Court." Finally, Judge Caproni noted that the case likely will return to District Court for a *de novo* review of the "Bankruptcy Court's report and recommendation or for trial." *Id*. at 7.

Defendants' claim that the ADR process has failed is not supported by the record. Defendants remain the subject of an Amended Modified ADR order, and mediations between the Plan Administrator and other counterparties continue. And, despite generalizations about how individual cases may ultimately proceed, Defendants have not shown that "idiosyncratic issues [have] come to predominate." *Id.* at 7.

Decisions from other District Judges in this Court already have determined that the Bankruptcy Court is in the best position to handle these cases at this stage of proceedings. This is consistent with the Supreme Court's *Arkison* decision and this District's case law. There is no need for intervention by the District Court or the superimposition of guidance on Judge Chapman's handling of the cases prior to the entry of dispositive rulings. Simply put, Defendants failed to demonstrate why they are unique and why they alone should have the reference withdrawn. The Motion should be denied.

## CONCLUSION

The Plan Administrator respectfully requests that the Court deny the Withdrawal Motion and grant such further relief as is necessary and appropriate.